**Harold D. POTTER, Plaintiff,**

v.

**CONTINENTAL TRAILWAYS, INC., an Illinois Corporation, Defendant.**

**Civ. A. No. 76–K–1018.**

United States District Court, D. Colorado.

Nov. 19, 1979.

Terrance R. Kelly, Kelly, Haglund, Garnsey & Kahn, Denver, Colo., for plaintiff.

Barry D. Roseman, Edward H. Sherman, P. C., Denver, Colo., for defendant.

## ORDER

KANE, Judge.

Potter seeks relief from Continental Trailway's alleged violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* Continental has moved to dismiss, or in the alternative, for summary judgment on the grounds that Potter failed to comply with the requirements of 29 U.S.C. § 626(d)(1) and to join an indispensable party whose joinder is not feasible.

### I

This is not the first time that this question has been presented. In his original complaint, Potter alleged that "[O]n . . . September 15, 1975, defendant refused to hire plaintiff solely because of his age." Potter also alleged July 1, 1976 as the date upon which he gave notice to the Secretary of Labor of his intent to sue defendant for age discrimination. Continental filed a motion to dismiss. One basis for the motion was that Potter's claim was barred due to his failure to comply with the requirements of 29 U.S.C. § 626(d)(1) which provide that:

> (d) No civil action may be commenced by an individual under this section until the individual has given the Secretary not less than sixty days notice of an intent to file such action. Such notice shall be filed—
>
> (1) Within one hundred and eighty days after the alleged unlawful practice occurred . . .

The notice given by Potter on July 1, 1976 was more than 180 days after September 15, 1975, the date of the alleged unlawful practice. On December 20, 1976, Potter filed a motion to amend his complaint by substituting the date June 5, 1976 for the date September 15, 1975 as the date upon which the unlawful act occurred. This motion was granted by Minute Order on December 27, 1976. By virtue of the newly alleged date in Potter's amended complaint, he complied with the 180-day ADEA notice requirement. Therefore, on January 21, 1977, the motion to dismiss was denied.

Continental now reasserts its original position that Potter failed to comply with the 180-day ADEA notice requirement on the basis that "facts which have surfaced in plaintiff's deposition indicate that it was September 15, 1975, and not July 5, 1976 when defendant allegedly refused to hire plaintiff." The allegations reveal that Potter, a 43 year-old bus driver for one of Continental's Texas divisions wished to obtain employment in Colorado. In August, 1975, he was told by one of Continental's agents that he could not submit an application in Colorado until he quit his job with the Texas division. Potter quit his job in Texas and moved to Cripple Creek, Colorado. On or about September 15, 1975, Potter went to Continental's Denver office and

was told by its agent that he could not submit an application to be a full-time bus driver because he was too old.

Apparently, however, during the August discussion with Continental's agent in Colorado, Potter was informed that if full-time work were not available, he might be hired as a part-time driver which would allow him eventually to "go in the back door" to full-time employment. Potter was told that according to the company's collective bargaining agreement, any part-time driver who worked more than twenty days per month would automatically become a full-time driver. Since there was no maximum age limitation for part-time drivers, he was eligible. He was advised further that in August, 1975, four full-time drivers from Colorado Springs became full-time drivers through the "back door." In December of 1975, Potter began driving part-time for D.C.S.P. Motorway, Inc., a division of Continental.

It soon became apparent to Potter that he was never being assigned the necessary twenty days per month to become eligible for full-time work. In June, 1976, plaintiff discovered that a general manager would periodically call plaintiff's supervisor and advise him to "watch it" when plaintiff worked close to the maximum twenty days. At this point Potter felt he would never be eligible for full-time employment through the "back door." He then contacted defendant's new general manager in Colorado about full-time employment. The general manager agreed to discuss the matter with Continental's Dallas attorney who would make the final decision. On June 5, 1976, a negative answer came back. Potter then contacted an attorney and filed notice of intent to sue with the Secretary of Labor on July 1, 1976.

The only procedural requirement at issue in this portion of defendant's motion is the 180-day ADEA notice requirement. Section 626(d)(1)'s 180-day notice requirement begins to run from the date in which the "alleged unlawful practice occurred." At issue here is *when* that unlawful practice occurred. Potter claims that he adequately alleged a claim of age discrimination on September 15, 1975 *and* on June 5, 1976; that even assuming the court finds the alleged discriminatory act by the defendant on September 15, 1975 was barred by virtue of the 180-day ADEA notice requirement, the court still has jurisdiction if it finds either that Continental's actions constituted a continuing violation of the Act or that Continental committed at least one discriminatory act on June 5, 1976. Continental argues that September 15, 1975 is the relevant date on which the unlawful act allegedly occurred, and that was more than 180-days before July 1, 1976, the date that notice of intent to sue was given; therefore, the complaint should be dismissed. Continental further contends that Potter has not alleged or established a continuing violation, nor has he supported an allegation of discriminatory refusal to hire him in June of 1976. The first question is whether the alleged facts which, if proven at trial, are sufficient to establish an actionable incident of discrimination occurring in June, 1976. They do.

Potter alleged that his first request for full-time employment was denied on or about September 15, 1975 "because he was too old." In an attempt to resolve this employment situation through an alternative which apparently provided a realistic hope for full-time employment, he accepted part-time employment from Continental with an eye towards slipping into full-time work through the "back door." When it became clear to him that he would not be assigned a sufficient number of days to become eligible for full-time work, he alleged that he again, in June of 1976, applied for full-time employment and was again rejected due to his age. It is clear that these allegations involve at least two separate and distinct acts of possible discrimination, the latter of which occurred within the 180-day ADEA notice period.

The situation is similar to that in *Molybdenum Corp. v. EEOC,* 457 F.2d 935 (10th Cir. 1972), where in March, 1969, plaintiff's application for employment with Molybdenum Corporation of America was rejected

for the stated reason that he had defective vision. Six months later, he again applied for employment with Molybdenum and, for the same stated reason, was again rejected. Subsequently, he filed a complaint with EEOC under Title VII of the Civil Rights Act of 1964 claiming that he was in reality denied employment because of his nationality. In this case, the court expressly denied holding that the challenged refusals to hire constituted a continuing violation, but instead held the refusals of employment to be "two separate and distinct acts, the latter of which occurred within the 90-day period." 457 F.2d at 936. *See also, Jurinko v. Edwin L. Wiegand Company,* 477 F.2d 1038, 1042 (3rd Cir. 1973); *Marlowe v. Fisher Body,* 489 F.2d 1057, 1062 (6th Cir. 1973).[1] In the instant case, the allegations of the complaint, if proven, indicate the occurrence of at least two separate and distinct acts, the latter of which would not be barred by § 626(d)(1) since it occurred within 180 days prior to Potter's notice to the Secretary of Labor of intent to sue.

The above determination does not preclude the possibility that discriminatory acts allegedly committed by the defendant on September 15, 1975 may be actionable. If plaintiff proves alleged incidents occurring in September, 1975, which in equity should estop Continental from raising the 180-day ADEA notice requirement as a bar, such incidents would form the basis for a cause of action, should the 180-day ADEA notice requirement be viewed as a precondition to suit subject to tolling or similar equitable modification.

It is true that in recent years courts have taken opposite views on the issue of whether this ADEA notice requirement is mandatory, with some circuits holding § 626(d)(1) is a jurisdictional prerequisite to suit, *see Powell v. Southwestern Bell Tel. Co.,* 494 F.2d 485 (5th Cir. 1974); *Ott v. Midland-Ross Corp.,* 523 F.2d 1367 (6th Cir. 1975);

*Hiscott v. General Electric Co.,* 521 F.2d 632 (6th Cir. 1975), and other circuits holding the 180-day notice requirement is more in the nature of a statute of limitations subject to equitable modification. *See Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3rd Cir. 1978); *Gabriele v. Chrysler Corp.,* 573 F.2d 949 (6th Cir. 1978); *Kephart v. Institute of Gas Technology,* 581 F.2d 1287 (7th Cir. 1978).

Recently, this same issue was before the Tenth Circuit in *Dartt v. Shell Oil Company,* 539 F.2d 1256 (10th Cir. 1976), *aff'd by an equally divided court,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). The court said:

> We do not contend that a filing of a notice of intent to sue is not a condition precedent to an action under the ADEA. However, the similarities between Title VII and the ADEA, the liberal reading of analogous time limitations in Title VII, the overly broad usage of the term "jurisdictional" by courts interpreting section 626(d) of the ADEA, the remedial nature of the legislation, and the lack of legal training and guidance for many of the ADEA complainants lead us to conclude that while section 626(d)(1)'s notice of intent-to-sue requirement cannot be waived, the 180-day time limitation should be interpreted as being subject to possible tolling and estoppel. *Id.* at 1260.

Lending additional support to this view is the ADEA Amendments of 1978, Public Law 95–256, enacted April 6, 1978, and the congressional commentary supporting the Amendments. The Senate Report, which was adopted as the Conference Committee Statement, explained that failure to file timely notice as required by § 626(d) had become the most common basis for dismissal of private ADEA lawsuits. S.Rep. No. 95–493, 95th Cong., 1st Sess. 12 (1978). Thus, the purpose of the amendment was to make it more likely that the courts will

---

1. While these cases involve alleged violations under Title VII, "Because of the similarities between ADEA and Title VII of the Civil Rights Act of 1964, courts sometimes refer to interpretations of Title VII for assistance in defining analogous sections of ADEA." *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1259 (10th Cir. 1976); *see also Moses v. Falstaff Brewing Co.,* 525 F.2d 92, 94 (8th Cir. 1975); *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir. 1975); *Goger v. H. K. Porter Co.,* 492 F.2d 13, 15 (3rd Cir. 1974).

reach the merits of the cases of aggrieved individuals. . . . 1978 U.S.Code Cong. & Admin.News, p. 534. Most significantly the amended version of the Act retains the 180-day notice requirement, but the Conference Committee Statement qualifies the requirement by interpreting it as follows:

> The conferees agree that the 'charge' requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this act. *See*, e. g., *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), affirmed by an evenly divided court, [434 U.S. 99,] 98 S.Ct. 600, [54 L.Ed.2d 270] (1977); *Bonham v. Dresser Industries, Inc.*, [569 F.2d 187] (3rd Cir. 1977); *Charlier v. S. C. Johnson & Sons, Inc.*, 556 F.2d 761 (5th Cir. 1977).

Conf. Re. H.R.Rep.No. 95–950, 95th Cong., 2d Sess., p. 12 (1978), *reprinted* in [1978] U.S.Code Cong. & Admin.News, p. 534.

■ In this interpretation of § 626(d)(1), congress unequivocally rejects the notion that the ADEA notice requirement is a mandatory jurisdictional prerequisite to suit. Since the 1978 Amendments to ADEA and the comments thereto were made after the commencement of this lawsuit, they are not binding on the present action. In light of the controversy over this ADEA notice requirement, however, the 95th Congress' interpretation of § 626(d)(1) is persuasive. The filing period in § 626(d)(1) is analogous to a statute of limitations and is subject to equitable modification through tolling or estoppel when necessary to effectuate the remedial purposes of the statute.

At this point, the question must be asked, has Potter alleged facts which, if accepted as true, form sufficient grounds for equitably modifying the 180-day ADEA notice requirement? He has.

Potter alleges that it was Continental's agents who informed him and encouraged him to utilize the "back door" method towards full-time employment should full-time work not be available. Relying on this information concerning such alternative means towards full-time employment, Potter began driving part-time for Continental. If Potter proves these alleged facts, it becomes clear that Continental originally provided him with an apparently realistic hope that full-time employment was imminent.

■ "[T]he maxim that no man may take advantage of his own wrong . . . [is] [d]eeply rooted in our jurisprudence . . . [and] has been applied in many diverse classes of cases . . . to bar inequitable reliance on statutes of limitations." *Glus v. Brooklyn Eastern Terminal*, 359 U.S. 231, 232–33, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959). This principle prevents Continental from asserting the 180-day limitation period where the alleged action of its own agent in suggesting the "back door" method induced Potter to delay filing suit until after 180 days passed from the alleged unlawful act. *Accord, Ott v. Midland-Ross Corp., supra*, at 1370; *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 948 (3rd Cir. 1971); *Bergeron v. Mansour*, 152 F.2d 27, 30 (1st Cir. 1945). Indeed, the time limit in which a plaintiff must file may be interrupted or suspended where plaintiff's failure to file is caused by employers holding out hopes of reemployment. *See Bonham v. Dresser Industries, Inc., supra*, at 192–93 (dictum). An employer may not retain a discriminatory policy of hiring, suggest alternative means for a potential employee to get around such a policy, and then, by not hiring the employee under alternative means, enjoy the benefit of the short 180-day ADEA notice requirement barring the employee's claim.[2]

The allegations show that Potter may be able to prove facts which would stop Continental from asserting the 180-day notice requirement. Potter must be given an opportunity to demonstrate the existence of the equitable factors he has alleged. Whether he can actually prove such facts remains to be seen.

**2.** *Accord, Griffin v. First Pennsylvania Bank, N.A.*, 443 F.Supp. 563, 566 (E.D.Penn.1977). Also lending support to this proposition is

*Franci v. Arco Corp.*, 460 F.Supp. 389, 397 (D.Conn.1978).

## II

Continental's second ground for its motion to dismiss, or in the alternative, for summary judgment, is that pursuant to Rule 19, F.R.Civ.P., Potter failed to join indispensable parties to this litigation; namely that he failed to join the United Transportation Union, AFL–CIO, the union representing the southern division of the company which hired Potter as a part-time driver in Colorado, and Local 1468 of the Amalgamated Transit Union, AFL–CIO, the union representing the northern division of this company. Continental claims that the unions are "necessary parties" to be joined if feasible since should Potter obtain the relief he seeks, specifically, if he obtains retroactive seniority as of September 15, 1975, the result would work a detriment to those union members hired after the date that such retroactive seniority would commence. Further, Continental argues that failure to join the unions would leave Continental "subject to substantial risk of inconsistent obligations" between court imposed retroactive seniority and the seniority established by virtue of the collective bargaining agreement. After citing two cases for the proposition that a union is a necessary party when retroactive seniority is sought,[3] Continental asks that Potter's case be dismissed, a request that requires a finding that the union is not only a necessary party, but is also an indispensible party when retroactive seniority is sought. By assuming that they are not feasible defendants because they were not included in Potter's notice of intent to sue,[4] Continental attempts to place the unions in the indispensable category to justify dismissal of this suit. Continental's argument is without merit. The unions are neither necessary nor indispensable parties to this action.

As noted, Continental seeks dismissal under Rule 19, F.R.Civ.P. Application of this rule calls for two separate but related steps of analysis. The first is a determination of whether the party is necessary to the action. Under Rule 19(a)(2), a person is considered a necessary party to the action if:

> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Only if the person is deemed necessary under this portion of the rule is the second step applied. Rule 19(b) provides that if joinder of the necessary party is not feasible, a determination must be made whether the action ought to proceed, or should be dismissed because an absent party is regarded as indispensable.[5] In the instant case, the four factors need not be considered since, under the first step, the unions cannot be regarded as necessary parties. Indeed, under Rule 19(a)(2)(i), the unions must first claim an interest relating to the subject matter of the action before a claim can be made that disposition of the action in the union's absence impedes their ability to protect that interest. It strains the imagination to conceive of interests that the two unions may have which relate to the subject matter of this action. Certainly the unions have no interest in maintaining seniority lists which are incorrect as a result of illegal exclusions. Continental's other claim that, should Potter prevail, the

---

3. *Townsend v. Exxon, U.S.A.,* 420 F.Supp. 189, 190 (D.Mass.1976); *Hodgson v. School Board,* 56 F.R.D. 393 (W.D.Pa.1972).

4. This assumption is invalid. *See Evans v. Sheraton Park Hotel,* 502 F.2d 177 (D.D.C. 1974); *Bremer v. St. Louis Southwestern Railroad Co.,* 310 F.Supp. 1333 (E.D.Mo.1969); *Reyes v. Missouri-Kansas-Texas Railroad Co.,* 53 F.R.D. 293 (D.Kan.1971).

5. This determination is based upon four factors: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or to those already parties; (2) the extent to which, by shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

unions would have an interest in protecting the seniority rights of members hired after the date that Potter's retroactive seniority would commence is also without merit. Since union members have no vested rights in seniority positions based on illegal exclusions, the unions simply cannot claim an interest in protecting so-called seniority rights of its members.

Additionally, if it is shown that the seniority list is incorrect due to the wrongful exclusion of Potter, then an order correcting it would not subject Continental to "substantial risk of inconsistent obligations" between court imposed retroactive seniority and seniority established by virtue of the collective bargaining agreement. Since collective bargaining agreements cannot base qualifications for seniority on illegal exclusions, the suggestion that a court order granting reinstatement to Potter would subject Continental to inconsistent obligations between union and court imposed seniority arrangements is absurd. Ordering Continental to hire drivers over a certain age will not subject Continental to inconsistent obligations with regard to its younger drivers.[6]

In addition to the union's failure to meet the requirements needed for consideration as an indispensable party under Rule 19, other factors lend support to the view that the unions are not necessary. There is no allegation by Potter that the unions violated either 29 U.S.C. § 621 *et seq.*, the collective bargaining agreements, or the Constitution of the United States. There is no prayer for relief against either union. In the absence of these allegations and such a prayer for relief,[7] and in the absence of a finding that the unions are necessary or indispensable parties to this action under Rule 19, F.R.Civ.P., the unions will not be affected should an order be issued to Continental to end age discrimination. Accordingly,

IT IS ORDERED that defendant's motion to dismiss for failure to comply with the ADEA 180-day notice requirement be and hereby is denied.

IT IS ALSO ORDERED that defendant's motion to dismiss for failure to join an indispensable party be and hereby is denied.

---

**6.** See *Phillips v. Carborundum Co.*, 361 F.Supp. 1016 (W.D.N.Y.1973).

**7.** See *Hibler v. Millers of Birmingham Bankhead Hwy., Inc.*, 496 F.2d 1171, 1172 (5th Cir. 1974); *Krulikowsky v. Metropolitan Dist. Council of Phila. & Vic.*, 212 F.Supp. 338 (E.D. Penn.1962).