**Howard BERKOWITZ**

v.

**ALLIED STORES OF PENN–OHIO, INC. t/a Pomeroy's and Allied Stores Corporation.**

Civ. A. No. 79–980.

United States District Court, E. D. Pennsylvania.

June 16, 1982.

Carl T. Bogus, Donald M. Bowman, Joanne E. Kleiner, Philadelphia, Pa., for plaintiff.

Michael F. Kraemer, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is an age discrimination action in which the plaintiff, Howard Berkowitz ("Berkowitz") contends that the defendants, his former employers, discharged him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Trial was held before this Court, sitting without a jury on May 11, 12, 13, 14 and 17, 1982. For the reasons hereinafter set forth, the Court finds that the age of Mr. Berkowitz was not a determinative factor in the decision of the defendants to discharge him.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331(a) since plaintiff has alleged a violation of a federal statute, the ADEA. Defendant Allied Stores Corporation ("Allied Stores") has filed a motion, pursuant to Fed.R.Civ.P. 41(b) to be dismissed as a defendant in this litigation. Specifically, Allied Stores contends (1) that it is not an "employer" of Mr. Berkowitz within the meaning of the ADEA and (2) that it is not subject to the personal jurisdiction of this Court because Allied Stores lacks sufficient minimum contact with Pennsylvania, the forum state. For the reasons hereinafter set forth, the Court will deny Allied Stores' motion to be dismissed as a defendant.

The ADEA defines an "employer" as "[a] person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... The term also means (1) any agent of such a person...." 29 U.S.C. § 630(b) (1974). The evidence presented at trial and contained in the record indicates that Allied Stores is a substantial business enterprise, the parent company of several subsidiaries who operate many retail stores in many states throughout the nation. Allied Stores has employed more than twenty persons throughout the 1970s to the present time. However, Allied contends that it was not plaintiff's employer but that Mr. Berkowitz was employed only by Allied Stores of Penn-Ohio, Inc. t/a Pomeroy's ("Allied of Penn-Ohio"), the wholly owned subsidiary of Allied Stores which operates the Pomeroy's stores as well as other retail outlets. As heretofore noted, defendant further contends that Allied Stores lacks minimum contact with Pennsylvania and that this Court may therefore not exercise personal jurisdiction over Allied.

The parties have stipulated that Pomeroy's employed Mr. Berkowitz at the time of his discharge in 1978. At that time, and throughout the 1970s, Allied Stores was the parent corporation of Allied of Penn-Ohio, a wholly-owned subsidiary corpora-

tion. Were Allied only a parent corporation that took no active role in the business decisions of its subsidiary, it would, as a corporate entity distinct from Allied of Penn-Ohio, not be considered an employer of the plaintiff. *See Publicker Industries v. Roman Ceramics*, 603 F.2d 1065, 1069 (3rd Cir. 1979); *Zubik v. Zubik*, 384 F.2d 267, 272 (3rd Cir. 1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968); *Fanfan v. Berwind Corporation*, 362 F.Supp. 793 (E.D.Pa.1973).

Here, however, Allied Stores was more than a passive parent. Allied Stores, acting through its agents, was regularly and intimately involved with the business decisions of Allied of Penn-Ohio, especially decisions concerning managing personnel. Mr. Joseph Lesser, a vice-president of Allied Stores and a senior vice-president of Allied of Penn-Ohio visited Pennsylvania on an average of once per month to supervise the Pomeroy's operation and to hold business meetings with Pomeroy's executives. He was, pursuant to Allied Stores' policy, consulted by the managing director of Pomeroy's before any Pomeroy's executive was discharged. Mr. Lesser's approval was also required to appoint and to discharge the managing director of Pomeroy's. Mr. Lesser frequently consulted with Pomeroy's managing director by telephone concerning all major policy decisions.

Defendant Allied Stores contends that Mr. Lesser's activities did not provide the minimum contacts necessary to confer personal jurisdiction over Allied Stores. Allied Stores contends that Mr. Lesser conducted his activities in his capacity as senior vice-president of Allied of Penn-Ohio, not in his capacity as vice-president of Allied Stores. However, Mr. Lesser testified that, at the time plaintiff was employed by Pomeroy's, and for some time thereafter, he had not been informed as to who was the chief executive officer of Allied of Penn-Ohio. Neither did he know the membership of the board of directors of Allied of Penn-Ohio, though Mr. Lesser was and is himself a member of that Board. Mr. Lesser further testified that he has never visited the corpo-

rate headquarters of Allied Penn-Ohio in Harrisburg, Pennsylvania, though he has frequently been to Harrisburg to supervise a member store of the Allied Penn-Ohio chain.

The Court finds that Mr. Lesser's activities concerning the operation and personnel policies of Pomeroy's were conducted in his capacity as a vice-president of Allied Stores, not as an executive for Allied of Penn-Ohio. The record in this case indicates that Allied of Penn-Ohio existed only on the organization charts and ledgers of the two companies. In actuality, Allied Stores, the parent company, directly supervised and controlled the major decisions concerning the operation of the Pomeroy's stores.

Under such circumstances, an active parent company supervising and controlling the operation of the stores of a wholly owned subsidiary must be considered an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b), according to any of the accepted tests for parent corporation responsibility. In determining whether a parent corporation should be considered amenable to suit, Courts have generally applied one of three tests: (1) the "integrated enterprise" test; (2) the "alter ego" test or the (3) "mere instrumentality" test.

The integrated enterprise test, which has been specifically applied to ADEA cases, states that "the appropriate standard for determining whether nominally separate corporations are to be considered a single employer is whether they comprise an integrated enterprise." *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715 (E.D.N.Y. 1978). *Accord, Linskey v. Heidelberg Eastern, Inc.*, 470 F.Supp. 1181, 1184 (E.D.N.Y. 1979); *Woodford v. Kinney Shoe Corporation*, 369 F.Supp. 911 (N.D.Ga.1973). The "integrated enterprise" test for determining whether a parent corporation is an employer was first developed in labor relations cases. *See Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965). It was later applied to cases involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *See, e.g., Williams v. New Orleans Steamship Association*, 341 F.Supp. 613, 615 (E.D.La.1972).

A test of corporate identity applied in Title VII cases is equally appropriate to a suit brought pursuant to the ADEA. The U. S. Supreme Court has held that the ADEA and Title VII should be construed similarly in light of their common language and purpose. *See Oscar Mayer and Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). In applying the integrated enterprise test, the Court assesses the (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control existing between the parent corporation and the subsidiary.

Under the alter ego test, a court may disregard a parent corporation's separate existence when one corporation is merely the alter ego of another and where such disregard of the corporate form is necessary to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Publicker Industries v. Roman Ceramics*, 603 F.2d 1065 (3rd Cir. 1979), *quoting Zubik v. Zubik*, 384 F.2d 267, 272 (3rd Cir. 1967).

Under the mere instrumentality theory, a parent corporation may be held liable for the acts of a subsidiary if the subsidiary is a mere instrumentality of the parent. To satisfy this test, three elements must be present. The plaintiff must show that (1) the parent controls the subsidiary to such a degree that the subsidiary is a mere instrumentality; (2) the parent is perpetuating a fraud or wrong through its subsidiary (e.g., violation of a statute); and (3) an unjust loss or injury to the claimant will result if the parent is allowed to be shielded by its separate corporate existence. *Fanfan v. Berwind Corporation*, 362 F.Supp. 793, 795 (E.D.Pa.1973). *See also Whayne v. Transportation Management Service*, 252 F.Supp. 573 (1966) *aff'd* 397 F.2d 287 (3rd Cir. 1968), *cert. den.*, 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 438.

The Court perceives little substantive difference in the tests heretofore discussed. All are different expressions and means of conducting essentially the same inquiry. Under each test, the Court inquires as to the degree of interrelation between the parent corporation and the subsidiary concerning the conduct that is at issue in the litigation. Where the parent and subsidiary have acted jointly or where the subsidiary has acted as an extension of the parent, subject to its knowledge and involvement, the Court may disregard the parent's separate corporate existence. On the basis of the record in this case, the Court finds that Allied Stores is a proper defendant in this action under all of the three tests. Allied Stores and Allied of Penn-Ohio form an integrated enterprise regarding the management decisions of Pomeroy's executives. In this area, Allied Stores is the alter ego of Allied of Penn-Ohio, which is but the mere instrumentality of Allied Stores.

Thus, Allied Stores was an employer of Mr. Berkowitz within the meaning of the ADEA. Allied Stores, acting through Mr. Lesser, was clearly conducting business in Pennsylvania on a regular, continuing, and substantial basis. It is therefore properly subject to the jurisdiction of this Court. The Court will therefore deny defendant Allied's motion, made pursuant to Fed.R. Civ.P. 41(b), to be dismissed as a defendant in this case. Allied Stores, as well as Allied of Penn-Ohio, would be liable for damage sustained by Mr. Berkowitz if his age was a determinative factor in their decision to dismiss him from employment at Pomeroy's.

Based on the evidence presented at trial, the Court also finds the following facts: Pomeroy's is a chain of eight retail department stores in eastern Pennsylvania, New Jersey and Delaware, with its principal offices in Levittown, Pennsylvania, and is owned by Allied of Penn-Ohio. Plaintiff, who was born on March 8, 1921 and is 61 years old, began working as a merchandiser of women's clothing for Pomeroy's Levittown store in 1959. He continued in that capacity, with some change in title, respon-

sibility and compensation, until he was discharged on May 20, 1978. Mr. Berkowitz was 57 years old at the time of his discharge.

Prior to initiating this litigation, Mr. Berkowitz filed a charge of age discrimination with the United States Secretary of Labor on December 28, 1978. He also filed a charge of age discrimination with the Pennsylvania Human Relations Commission on December 29, 1978. He filed his complaint in this Court on March 16, 1979.

From 1972 through 1976, Mr. Berkowitz was divisional merchandise manager of three departments—Misses Sportswear, Junior World, and Women's Coats and Suits. In early 1977, the sportswear department was assigned to another manager and plaintiff was assigned the women's dresses department.

Until 1976, there had existed a three-store Pomeroy's chain based in Levittown and a four-store Pomeroy's chain based in Wilkes-Barre. In 1976, the Levittown Pomeroy's and the Wilkes-Barre Pomeroy's were consolidated into one chain and an eighth store was later opened. Accompanying this reorganization were several changes in the internal management operations procedure of Pomeroy's. After the reorganization, Mr. Berkowitz had merchandising responsibility for twice as many stores as previously.

The daily operations of Pomeroy's are supervised by a managing director, whose office is located at the Pomeroy's Levittown store. When plaintiff began working at Pomeroy's, the managing director was Anton Willamson, who continued in that capacity until 1972, when he was replaced by Edward Munley. Mr. Munley held the post of managing director until 1975, when he was replaced by Roman Rubenstein. In 1978, Mr. Rubenstein was replaced by Paul Davidow, the current managing director.

The evidence presented at trial shows Mr. Berkowitz to have been a competent, honest, hard-working, and meticulous merchant, who was well-liked by his co-workers and inspired loyalty from the merchandise

buyers under his direction. His current employer testified that he continues to perform well in his current position as a merchandise manager for a 15-store chain of women's clothing shops. The department under his direction at Pomeroy's performed well through the 1960s but had both good and bad years during the 1970s.

After Edward Munley became Pomeroy's managing director in 1972, annual reviews of Mr. Berkowitz and other executives were conducted. Mr. Berkowitz received the following summary appraisals in this annual review conducted by the managing director: "outstanding" in 1972; "incomplete" in 1973; "outstanding" in 1974; "satisfactory" in 1975; "very good" in 1976; "very good" in 1977; and "unsatisfactory" in 1978, the 1978 review having been prepared after Pomeroy's decision to discharge Mr. Berkowitz. Each review covered the previous year's performance.

Read as a whole, these reviews, conducted by three different supervisors (Messrs. Munley, Rubenstein, Robert H. Landau), show plaintiff to be a good merchant, but not one without faults. As early as 1973, his reviews noted that he was set in his ways of operating his departments, "extremely conservative" and somewhat defensive when criticized for these perceived shortcomings. However, other reviews, particularly that of 1974, show that he responded well to earlier lukewarm reviews. However, the problems alluded to in earlier reviews continued to be noted in the 1976 and 1977 reviews.

During the 1970s, the sales volume and gross margin (total retail dollar sales minus the cost of goods sold) in the plaintiff's departments increased in some years and decreased in others. However, during 1976 and 1977, the departments for which Mr. Berkowitz was responsible were generally decreasing in both sales and gross margin. (Exhibit D–3). Retailers regard gross margin as a significant figure that provides a good indication of a merchandise manager's relative success in operating his departments. During the 1976–1977 period, the entire Pomeroy's chain was performing poorly relative to other stores owned by Allied and its subsidiaries (Exhibit D–3). As a result, Mr. Berkowitz and others were replaced.

Mr. Rubenstein, the managing director in early 1978, was principally responsible for the decision to discharge Mr. Berkowitz. He consulted with Mr. Lesser and Mr. Davidow before so doing; they concurred in his decision. Mr. Rubenstein made this decision because he felt that Mr. Berkowitz had not adapted well to the changes in Pomeroy's internal operation or to changing trends in the fashion industry, resulting in poor performance in the departments under his supervision. At the time, Mr. Rubenstein was making and considering several significant personnel changes in an effort to improve Pomeroy's fortunes. He was, at the time he decided to discharge plaintiff, also considering discharging Mr. Davidow. Several months later, Mr. Lesser, acting on behalf of the parent corporation, decided to discharge Mr. Rubenstein and replace him with Mr. Davidow and Mr. Rubenstein was terminated and replaced with Mr. Davidow. The Court finds that the evidence shows that the decision to discharge Mr. Berkowitz was based on dissatisfaction with his performance during 1976 and 1977 and management's desire to find someone who would produce a gross margin more acceptable to Allied Stores.

At trial, both sides presented statistical studies concerning the discharge of Pomeroy's executives. Most of the testimony was devoted to criticizing the methodology of the opposing party. Predictably, the plaintiff's expert witness concluded that older Pomeroy's executives were more likely to be terminated and that this statistical probability did not result from random chance or sampling error. The defendant's expert witness concluded that no such pattern existed unless one made arbitrary methodological assumptions favorable to the plaintiff. For the reasons hereinafter set forth, the Court found the expert statistical evidence of both sides to be inconclusive.

In suits brought pursuant to the ADEA, the plaintiff must prove by a pre-

ponderance of the evidence a prima facie case of discrimination. To satisfy this burden, a plaintiff must show that (1) he was within the age group protected by the ADEA; (2) he was qualified for the job he held; (3) he was discharged, and (4) the position was filled with a younger employee or employees. *Smithers v. Bailar*, 629 F.2d 892, 894–95 (3rd Cir. 1980). These guidelines for establishing a prima facie case of discrimination were first set forth by the United States Supreme Court in the context of Title VII suits involving race discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and have been considered applicable in ADEA cases as well. *See Smithers, supra*, 629 F.2d at 894–95; *Rodriguez v. Taylor*, 569 F.2d 1231, 1239 (3rd Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Loeb v. Textron*, 600 F.2d 1003 (1st Cir. 1979); *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir. 1975). *See also Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (analogous sections of ADEA and Title VII should be construed similarly).

█ Once plaintiff has established a prima facie case of age discrimination, the burden of production shifts to the defendant to rebut the resulting presumption of discrimination by producing evidence that the plaintiff was discharged for a legitimate, non-discriminatory reason. To do this, the defendant must set forth, through the introduction of admissible evidence, the reasons for discharging the plaintiff. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). The burden is not a heavy one. The defendant need only articulate and support rather than prove a non-discriminatory reason for discharge. The employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. *Burdine, supra*, 450 U.S. at 257, 101 S.Ct. at 1095; *accord, Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978);

*Grant v. Gannette*, Civil Action No. 79–515 (D.Del. April 21, 1982).

█ Once the defendant proceeds with his burden of production to rebut plaintiff's prima facie case, the plaintiff, who has the burden to convince the trier of fact, by a preponderance of the evidence, may then rebut the defendants' proffered reason for discharging the plaintiff by showing that it is merely pretext for age discrimination.

█ Although discrimination cases can be usefully analyzed in terms of the three-phase framework set forth in *McDonnell Douglas v. Green, supra*, "there is no requirement that the evidence be introduced in such a compartmentalized form." *Worthy v. United States Steel Corporation*, 616 F.2d 698, 701 (3rd Cir. 1980). Plaintiff's evidence relevant to the question of pretext can be presented as part of his initial evidence going to the prima facie case itself or it may be developed during the other party's case in chief, such as by cross-examination. *Id.* at 701; *Whack v. Peabody & Wind Engineering Co.*, 595 F.2d 190, 193 (3rd Cir. 1979).

█ The plaintiff retains the burden of persuasion throughout the litigation. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). To satisfy this burden, the plaintiff must show that the plaintiff's age was a "determining factor" in the defendant's decision to discharge him. That is, the plaintiff must show that age was a proximate cause of his discharge and that "but for" his age, he would not have been discharged. In *Smithers v. Bailar*, 629 F.2d 892, 897 (3rd Cir. 1980), the Third Circuit stated that, to persuade the trier of discrimination,

> plaintiff must show that age was one factor considered by the employer and, second, plaintiff must prove that age made a difference in the disputed decision.... [P]laintiff must establish that age played a part in the decision even though the employer could demonstrate strong and perhaps more compelling non-

discriminatory reasons for his actions.... [a] plaintiff need not prove that age was the employer's sole or exclusive consideration, but must prove that age made a difference in deciding the promotion, retention or discharge.

629 F.2d at 897–98. *Accord, Loeb v. Textron,* 600 F.2d 1003, 1019 (1st Cir. 1979); *Cleverly v. Western Electric Co.,* 594 F.2d 638, 641 (8th Cir. 1979). *Kentroti v. Frontier Airlines, Inc.,* 585 F.2d 967, 974 (10th Cir. 1978); *Laugesen v. Anaconda,* 510 F.2d 307 (6th Cir. 1975).

■ In this case, plaintiff has established a prima facie case of discrimination. He was 57 years old at the time of his discharge and therefore within the ADEA's protected class of those 40 years old or more, but less than 65 years old. 29 U.S.C. § 621. The evidence presented by both parties shows plaintiff to have been a hard-working, competent employee who was qualified to act as a merchandising manager. He was, of course, discharged, and was replaced by three persons in that the departments managed by Mr. Berkowitz were divided among three merchandising managers after Mr. Berkowitz left. All three of these merchandising managers were younger than Mr. Berkowitz. Michael Curatillo, 34, replaced Mr. Berkowitz as divisional merchandise manager of the junior world department. James Giblen, 44, replaced Mr. Berkowitz as manager of the dress department. Gary Kellman, 36, replaced Mr. Berkowitz as manager of the coats and suits department. Thus, plaintiff has met all four prongs of the *McDonnell Douglas* test for a prima facie case of age discrimination as enunciated by *Smithers v. Bailar, supra.*

■ The defendants have articulated a non-discriminatory reason for discharging Mr. Berkowitz—the lackluster performance of the departments under his supervision during 1976 and 1977. Defendants supported their version of plaintiff's discharge through the sales and gross margin figures for plaintiff's departments as compared to the performance of other Allied member stores and the Pomeroy's chain as a whole.

While it is true that the Pomeroy's chain as a whole performed in a mediocre fashion during those years, plaintiff's departments did somewhat more poorly than Pomeroy's as a whole. Under these circumstances, the defendants could have legitimately sought to replace merchandise managers in those departments despite Mr. Berkowitz's excellent past record and fine personal qualities. Defendant's rationale for the discharge is made more plausible by the expansion and reorganization of the Pomeroy's chain in 1976, an expansion that changed the nature of the divisional merchandise manager post that Mr. Berkowitz had held and performed well in prior to 1975.

■ Under these circumstances, the plaintiff has failed to persuade the Court, sitting as a trier of fact, by a preponderance of the evidence, that the defendants' reasons for his discharge were a mere pretext for discrimination. Mr. Rubenstein, the president of Pomeroy's who dismissed the plaintiff, was himself discharged shortly thereafter despite his relative youth. Mr. Rubenstein was replaced by an older man. One of the younger men who replaced Mr. Berkowitz was discharged only a year after the plaintiff's termination. Obviously, Pomeroy's market performance engendered a good deal of personnel changes in the late 1970s, and the young, the old, and the middle aged, were subject to these changes. Reviewing the evidence, this Court has not been convinced that age played a role in plaintiff's dismissal. The evidence demonstrates that, in early 1978, Messrs. Rubenstein, Lesser and Davidow would have dismissed the division merchandise manager for junior world, dresses, and coats even if he had been 39 years old or younger.

Plaintiff testified, in support of his claim of pretextual defendant reasons for his discharge, that Mr. Lesser had conducted a meeting in February, 1978, at which he put the Pomeroy's executives on warning as a result of the chain's poor 1977 performance. After the meeting, Mr. Lesser greeted Mr. Berkowitz, whom he had known in a business capacity for nearly 20 years, by saying "Howard Berkowitz, you've been around

since the dinosaurs roamed the earth." Mr. Berkowitz regarded this comment as a derogatory reference to his age. Mr. Lesser testified that he did not remember making the comment, but that he occasionally greeted business associates in jest by using the "dinosaurs" expression. In view of Mr. Berkowitz's long tenure with Pomeroy's, a tenure shared by Mr. Lesser himself, Mr. Lesser's comment does not constitute persuasive evidence of intent to terminate the plaintiff because of his age. Furthermore, the evidence conclusively shows that Mr. Rubenstein initiated the decision to discharge the plaintiff and Mr. Lesser concurred in Mr. Rubenstein's decision. The Court finds, however, that at the February, 1978 meeting heretofore referred to, it was Mr. Lesser who told all Pomeroy's executives that management changes could be expected unless performances were substantially improved. Mr. Rubenstein viewed this as a mandate from Allied Stores to make changes in managing personnel.

The statistical evidence presented by the parties was not persuasive on the ultimate issue in this case. The studies conducted by both the plaintiff's expert and the defendant's expert are flawed. Dr. Staller, the plaintiff's expert witness, used a definition of age that overstates any pattern to the dismissals of Pomeroy's executives studied because it treats workers who stay at Pomeroy's as ageless while considering those terminated as being as old as possible under the circumstances. Dr. Staller admitted that his definition of age was slanted in favor of the plaintiff. Dr. Andrisani, the defendant's expert witness, also used a slanted age definition. His was slanted in the defendant's favor because it allowed those who remain at Pomeroy's to continue to age while halting the aging process of those who are discharged, thereby making the terminated executives as young as possible. Exhibit P–10 is the only piece of evidence in this case that is statistically significant at the .05 level [1] and appears to employ a reliable definition of age. However, P–10, and the other statistical exhibits, are easily altered by a change in the employment history of one or two of the sample employees. The Supreme Court has noted that "[c]onsiderations such as small sample size may, of course, detract from the value of (statistical) evidence." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 n.20, 97 S.Ct. 1843, 1856, n.20, 52 L.Ed.2d 396. *See also Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 620–21, 94 S.Ct. 1323, 1333–1334, 39 L.Ed.2d 630 (1974). The results of the data are also easily altered by changes in the age categories (*e.g.*, age 50 versus age 52). The Court, therefore, finds the statistical evidence in this case to be inconclusive and declines to rely upon it.

■ The evidence presented at trial showed Mr. Berkowitz to be a competent, hard-working, well-liked employee. Both plaintiff's and defendant's witnesses agreed as to his many admirable qualities. He appears to be doing well in the position in which he is now employed. Pomeroy's decision to discharge Mr. Berkowitz may well have been an error in business judgment. However, the law does not prohibit a company making errors in its personnel decisions, so long as it does not discriminate on the basis of age, race, gender, or religion. The ADEA states only that age cannot be a determining factor in personnel decisions.

The plaintiff has failed to carry his burden of persuading this court that age was a determining factor in the defendant's deci-

---

1. "Statistical significance" is a term of art employed by statisticians. The level of "statistical significance" for a given associational relationship (*e.g.*, correlation between age and termination of employment) indicates the degree of probability as to whether the correlation is the result of random chance or sampling error. For example, if a given relationship is found to be statistically significant at the .20 level, there exists a 20 percent chance that the observed correlation resulted from random chance or sampling error. Depending upon the type of data studied and the measure of association used, various tests are employed by social scientists in order to determine the degree of statistical significance. It is generally stated that in order for a statistical analysis to be reliable, the statistical significance must be at the .05 level or better. *See generally*, H. Blalock *Social Statistics* (2d Ed. 1977).

sion to discharge him. The Court will therefore enter an order granting judgment in favor of the defendants and against the plaintiff. This memorandum is in lieu of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). An appropriate order will be accordingly entered.