Robert A. BRENIMER, Plaintiff,

v.

The GREAT WESTERN SUGAR COMPA-
NY, a Delaware corporation, and Hunt
International Resources Corporation, a
Delaware corporation, Defendants.

Civ. A. No. 81–K–1717.

United States District Court.
D. Colorado.

June 29, 1983.

for decision. They are: Hunt's motion to dismiss; a joint motion for summary judgment; a joint motion for partial summary judgment on procedural and remedial issues; and a joint motion to quash Brenimer's jury request. For the reasons given below, I deny the motions to dismiss, for summary judgment and to quash the jury request. In part, I grant the motion for partial summary judgment.

The background of this litigation is easily viewed. Great Western is a wholly-owned subsidiary of Hunt. Brenimer worked for Great Western for twenty-five years prior to his termination. As vice-president of industrial relations, Brenimer was responsible for personnel and labor relations. He was terminated on 29 September 1979 and his position combined with that of the director of personnel. The former director, Bill Baird, assumed all of the combined duties except for contract negotiations, which were assumed by Clarence Davan. At the time of his termination Brenimer was 58 years old, Baird was 54, and Davan 48. Brenimer exhausted his administrative remedies, then sued Great Western for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, breach of implied contract, intentional infliction of emotional distress and violation of § 8–2–116, *Colo.Rev.Stat.* (1973), which prohibits discharge of an employee because of age. After initial discovery, Brenimer added Hunt as a defendant.

Kathleen Mills, Timothy E. Whitsitt, Denver, Colo., for plaintiff.

Earl K. Madsen, Golden, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Defendants have four motions before me which have been briefed and are now ready

### I. HUNT'S MOTION TO DISMISS

Hunt advances two grounds for dismissal. I will treat the motion as one for summary judgment, since both sides have relied upon matters outside the pleadings to make their arguments. Rule 12(c), *Fed.R.Civ.P.* It is undisputed that Brenimer did not name Hunt in his complaint filed with the EEOC. From this Hunt argues that I lack subject matter jurisdiction because § 626(d)'s 60 day notice requirement was not satisfied.[1]

---

1. "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

Hunt relies, in part, on an opinion by Judge Finesilver which dismissed an ADEA suit against a holding company where the plaintiff filed suit only 20 days after giving notice to the company. Judge Finesilver determined that the 60 day notice requirement was a mandatory, jurisdictional prerequisite to suit. *Hannon v. Continental National Bank,* 427 F.Supp. 215 (D.C.Colo. 1977). *And see Goger v. H.K. Porter Company, Inc.,* 492 F.2d 13 (3rd Cir.1974); *Edwards v. Kaiser Aluminum and Chemical Sales, Inc.,* 515 F.2d 1195 (5th Cir.1975).

Brenimer argues that he only became aware of Hunt's role through discovery, and thus should not be barred from suit. The notice period, in his view, is a prerequisite to filing suit, but is neither mandatory nor jurisdictional. I have held in the past that the notice requirement is not jurisdictional and is more in the nature of a statute of limitations, thus subject to equitable modification. *Potter v. Continental Trailways, Inc.,* 480 F.Supp. 207 (D.C.Colo.1979). In *Potter,* I relied upon the Tenth Circuit's opinion in *Dartt v. Shell Oil Company,* 539 F.2d 1256 (1976). I acknowledged at the time that the courts were split on the nature of the notice requirement, but was persuaded by recent legislative history and amendments to ADEA which Congress had passed in 1978. 480 F.Supp. at 210, 211.

 A more recent Tenth Circuit decision confirms my previously-held opinion. *Romero v. Union Pac. R.R.,* 615 F.2d 1303 (1980). The *Romero* court identified four factors to consider in evaluating a suit filed without the benefit of the Secretary of Labor's conciliation efforts, as mandated by § 626.

"1) Whether the role of the unnamed party could through reasonable efforts by

the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [sic] are so similar as the unnamed party's that for the purposes of obtaining conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." 615 F.2d at 1312.

Factors one and three are beyond cavil. Brenimer did not know of Hunt's existence when he filed his EEOC complaint, nor is it clear that he could have found it out, absent the discovery process. No prejudice has been alleged or shown to have been suffered by Hunt. Although the evidence before me relating to factor two is disputed, I resolve it in favor of the plaintiff.[2] EEOC complaints must be liberally construed since they are written by laymen who are unfamiliar with the technicalities of pleading or the jurisdictional requirements of the statute. *Friedman v. Wiener,* 515 F.Supp. 563 (D.C.Colo.1981); *Romero v. Union Pac. R.R., supra.* I do not consider factor four applicable here. Since Brenimer was unaware of Hunt's existence at the time he filed his EEOC complaint, it is implausible, and not suggested, that Hunt told Brenimer to communicate to it through Great Western.[3]

The second basis advanced by Hunt for dismissal is its claim that as a parent corporation it is not liable for acts by its subsidiary because Hunt is not an employer for ADEA purposes.[4] A variety of tests to

---

(1) within 180 days after the alleged unlawful practice occurred;" 29 U.S.C. § 626(d). Hunt also complains that it was never served with a copy of the summons and complaint. A copy of the return of summons showing proper service upon Hunt is on file in the U.S. District Court Clerk's office for review by counsel.

**2.** *See* page 222 for a description of the evidence.

**3.** In the evidence before me there is also some suggestion that Hunt may have been aware of the EEOC complaint filed against Great Western.

**4.** "The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar

determine this issue are urged upon me by the parties. The first test asks if Great Western was Hunt's agent under traditional agency principals. *See Hassell v. Harmon Foods, Inc.,* 336 F.Supp. 432 (W.D. Tenn.1977); *Wilkerson v. Siegfried Insurance Company,* 621 F.2d 1042 (10th Cir. 1980). The second test asks if the two companies are so interrelated that they constitute an "integrated enterprise." borrowing the phrase from the NLRB. *Baker v. Stuart Broadcasting Company,* 560 F.2d 389 (8th Cir.1977); *Linskey v. Heidleberg Eastern, Inc.,* 470 F.Supp. 1181, 1184 (E.D.Pa. 1979). This test requires me to weigh four factors:

1. Interrelationship of operations;

2. Common management, directors and boards;

3. Centralized control of labor relations and personnel; and

4. Common ownership and financial control.

Hunt relies primarily upon *Hassell* and *Baker, supra.* The affidavits and exhibits before me tend to show: first, that the operations of Hunt and Great Western were separate, with corporate offices maintained in Dallas and Denver, and separate bank accounts and record-keeping; second, that Great Western's day-to-day management was entirely separate from Hunt's, aside from a controlling number of directors on Great Western's board; third, that the two companies pursued separate and different labor and personnel policies, with Great Western's hiring, firing and corporate practices conducted exclusively by Great Western; and fourth, that Hunt limited financial control to approval of Great Western's capital expenditure budget, approval of individual expenditures above $100,000, approval of long-range budget plans and approval of capital expenditures over $1,000,-000. Great Western does not dispute that it is a wholly-owned subsidiary of Hunt.

Brenimer urges upon me an Eastern District of Pennsylvania opinion, *Berkowitz v. Allied Stores of Penn-Ohio, Inc.,* 541 F.Supp. 1209 (E.D.Pa.1982) where Judge Broderick, in a thoughtful and persuasive opinion, discussed some of the theories advanced here.

The Court perceives little substantive difference in the tests heretofore discussed. All are different expressions and means of conducting essentially the same inquiry. Under each test, the Court inquires as to the degree of interrelation between the parent corporation and the subsidiary concerning the conduct at issue in the litigation. Where the parent and subsidiary have acted jointly or where the subsidiary has acted as an extension of the parent, subject to its knowledge and involvement, the Court may disregard the parent's separate corporate existence. 541 F.Supp. at 1215.

■ At this stage of the litigation I do not need to follow any particular test.[5] It is clear to me, under any of the tests advanced, that Brenimer has met his burden, as required by Rule 56(e), *Fed.R.Civ.P.,* of showing that there is a genuine issue of fact as to Hunt's status as an employer. Brenimer's affidavits and exhibits, which run to 160 pages, tend to show that Hunt's president, Ivan Bielenberg, was intimately involved in Great Western's affairs, in long-range development and strategy, in budgetary planning, in executive level personnel decisions and, more importantly, in the layoffs and terminations of September, 1979.

At this juncture, summary judgment is inappropriate. The defendant has the burden of clearly and positively demonstrating that there is no genuine issue of fact to be entitled to summary judgment. "Ordinarily, the question of whether a defendant was the employer of the plaintiff in an age discrimination case is a question of fact which is to be decided by the jury." *Woodford v. Kinney Shoe Corporation,* 369

year.... The term also means (1) any agent of such a person...." 29 U.S.C. § 630(b).

**5.** The Tenth Circuit apparently used an agency analysis to resolve *Wilkerson v. Siegfried Insurance Company,* 621 F.2d 1042 (10th Cir. 1982).

F.Supp. 911 (N.D.Ga.1973). I deny this motion.

## II. SUMMARY JUDGMENT ON THE MERITS

■ As an alternative basis of attack, Hunt and Great Western have moved for summary judgment on the merits of this case. The Tenth Circuit is consistent with most other jurisdictions in its approach to an age discrimination case. A three-stage analysis is typically employed. *Schwager v. Sun Oil Company,* 591 F.2d 58 (10th Cir. 1979). At the first stage, the plaintiff must be able to prove a *prima facie* case of discrimination. He must show that:

1. He was within the protected age group;
2. He was doing satisfactory work;
3. He was discharged despite the adequacy of his work; and
4. His position was filled ·by younger employees.

591 F.2d at 61.

As I read the defendants' brief, it disputes none of these facts. Brenimer was 58 when terminated, thus within the protected class of 29 U.S.C. § 631(a).[6] His work record appears to have been satisfactory. There is little question that he was discharged. Both Baird and Davan, who replaced Brenimer, were younger than he, 54 and 48 years old, respectively.

In the second stage of analysis, the burden of going forward shifts to the employer to show "reasonable factors other than age ..." were responsible for the firing. 591 F.2d at 61. The defendants' affidavits and exhibits show that Great Western undertook a general reorganization based on economic considerations, that the company would have kept Brenimer if it could have afforded the "luxury," and that Baird was the more qualified of the two for the combined position. An expert statistical study buttresses their argument. The study concludes that "there is just no indication ...

that separations were conferred on older employees in greater than proportional numbers." *Defendants' Exhibit 3,* page 12. For summary judgment purposes, the defendants have met their burden of going forward.

In the final stage of analysis, the plaintiff must be given an opportunity to refute the adequacy of the employer's explanation and to show that the stated reasons are merely pretextual. *Mohammed v. Callaway,* 698 F.2d 395 (10th Cir.1983). Here, the plaintiff's evidence suggests that the "stated reason [for termination] was only a pretext for prohibited discrimination." 698 F.2d at 399. Brenimer's exhibits and affidavits tend to show that he was more qualified for the consolidated position than Baird. Further, *his* expert's statistical analysis of the pattern of lay-offs concluded not only that Great Western's expert report was flawed, but also that the lay-offs discriminated against older managerial employees. The defendants, by way of reply, vigorously defend *their* expert's analysis.

I find that there are numerous material questions of fact at issue for trial, not the least of which is the defendants' state of mind—their motive and intent—facts which are particularly difficult to decide on summary judgment. The motion for summary judgment is therefore denied.

## III. PARTIAL SUMMARY JUDGMENT

In the alternative, the defendants have moved for partial summary judgment on various remedy and procedural issues. They claim that there is no private right of action for violations of the Colorado age discrimination statute, § 8–2–116, but they cite no authority for that proposition. They argue, instead, that the facts preclude any finding that Brenimer was discharged solely on account of his age.

I have previously decided that § 8–2–116 does create a private right of action and need not repeat my analysis here. *Rawson*

---

**6.** The class is limited to individuals who are at least forty years old but less than seventy years old. 29 U.S.C. § 631(a).

*v. Sears, Roebuck & Company,* 530 F.Supp. 776 (D.C.Colo.1982). For the reasons given in part II, above, summary judgment on Brenimer's fourth and eighth claims for relief is denied.

■ The defendants next contend that as a matter of law and fact Brenimer's second and sixth claims for relief (breach of implied contract of employment) must be dismissed. They say the contract between Brenimer and themselves was at will and terminable at any time by either party.

At issue is the interpretation I should give to the Colorado Court of Appeals's decision in *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978). In *Lampe,* the court said:

> In the absence of special consideration or an express stipulation as to duration of employment, an indefinite hiring is terminable at will by either party. 590 P.2d at 514

In *dictum,* the court suggested that the rule would not apply if a plaintiff were to claim he had been discharged for exercising a "specifically enacted right [or] duty," such as the right to file for workman's compensation or the duty to serve on a jury. 590 P.2d at 515. Brenimer did not exercise a specifically enacted right or duty; there can be no claim for breach of contract. *Rawson v. Sears, Roebuck & Company,* 530 F.Supp. 776, 781, 782 (D.C.Colo.1982); *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 195 (3rd Cir.1977); *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1054, 1055 (E.D.Pa. 1977). Defendants' motion for summary judgment on Brenimer's second and sixth claims for relief is granted.

Brenimer's third and seventh claims for relief are predicated upon alleged intentional infliction of emotional distress. The defendants contend that the facts do not give rise to a cognizable claim for intentional infliction of emotional distress. In *Rawson, supra,* I noted that most plaintiffs believe the defendant's conduct outrageous, and that, typically, lawsuits cause emotional distress to plaintiffs and defendants, alike. I concluded that

claims for emotional distress will normally only be cognizable in cases where the defendant has engaged in a pattern of conduct that either was intended to cause or recklessly did cause severe emotional distress. While it is possible for a single, isolated activity to be a sufficient basis for a cause of action, it will only be so where ... a private individual has blatantly and severely harassed another. 530 F.Supp. at 780.

Since my decision in *Rawson,* the Colorado Court of Appeals decided *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo.App.1982). *Zalnis* requires a judge to evaluate the totality of the circumstances in determining whether a defendant has intentionally inflicted emotional distress. In *Zalnis,* the plaintiff alleged that the defendants had repeatedly taken away her recently purchased car and repeatedly harassed her, especially where they knew she was susceptible to emotional distress from their actions. Her allegations were held to state a sufficient cause of action.

In *Luna v. City and County of Denver,* 537 F.Supp. 798 (D.C.Colo.1982), I upheld a claim similar to that of *Zalnis.* I pointed out that "[a]lthough the facts on the record before me do not differ greatly from those in *Trimble* [*v. City and County of Denver,* 645 P.2d 279 (Colo.App.1981)], the plaintiff has alleged a longer and more detailed pattern of conduct than was expressed in the *Trimble* opinion. 537 F.Supp. at 800.

■ In support of his claim, Brenimer relies on his expert's statistical analysis which assertedly shows that the defendants have engaged in a pattern of discrimination from 1977–1981. He also claims to have suffered humiliation, stress, depression and frustration as a result. Even were I to assume the truth of the expert report and Brenimer's emotional distress, I would still be forced to dismiss his third and seventh claims. The facts here are distinguishable from those in *Luna,* where the plaintiff alleged he had been passed over for promotion *several times.* Brenimer, on the contrary, was fired only once. The repeated acts of the defendants, if in fact they were

repeated, of firing older employees do not constitute a pattern of conduct against Brenimer. His third and seventh claims for relief are therefore dismissed.

█ Issues of damages in an ADEA suit form the final basis for the defendants' motion for partial summary judgment. They make two arguments. First, they claim that Brenimer's damages, if they be damages at all, amounts to a request for "front pay," which, they claim, is not recoverable under ADEA. I understand front pay damages to relate to loss of future income, as opposed to back wages, from the date a plaintiff is restored to his former economic status. *Kolb v. Goldring, Inc.,* 694 F.2d 869, 874, n. 4 (1st Cir.1982). There is sharp disagreement between the parties on this point. The defendants seem to argue that the appropriate date of restoration is the date of termination, 29 September 1979. The plaintiff asserts that he still has not been restored to a job with benefits and salary equivalent to that which he had at Great Western. Under such circumstances, the date of Brenimer's restoration to economic health, the amount and kind of his damages, and questions relating to mitigation of damages are properly left to a jury decision.

█ Second, defendants assert that in an ADEA suit there can be no compensatory damages for pain, suffering, damage to reputation and the like. They cite numerous cases in support of their position. I am aware that there is a sharp conflict at both the district and circuit court level regarding the availability of compensatory and punitive damages in an ADEA action. I have ruled, however, in the past, that such damages are available in an age discrimination suit and see no persuasive reason to change my opinion. *Kennedy v. Mountain States Telephone and Telegraph Company,* 449 F.Supp. 1008 (D.C.Colo.1978); *and see Wise v. Olan Mills Incorporated of Texas,* 485 F.Supp. 542 (D.C.Colo.1980) (Carrigan, J.).

█ The plaintiff properly points out that he also seeks liquidated damages, which are available under the act for willful violations. 29 U.S.C. § 626(b). The defendants say that the standard for a willful violation is one of willful infliction of pain and suffering. They rely on case law developed in Colorado after *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970). I disagree. The defendants confuse the plaintiffs claims for relief. In order to show a willful violation, a plaintiff need show only that the defendant knew its actions were subject to the ADEA. *Hedrick v. Hercules,* 658 F.2d 1088, 1096 (5th Cir.1981). Generally, an act is willful under the ADEA if it was " 'intentional, knowing and voluntary' as distinguished from accidently or unknowingly done." *Combes v. Griffin Television, Inc.,* 421 F.Supp. 841, 844 (W.D.Okla.1976). Whether the defendants acted intentionally and willfully is disputed, and is best left for jury determination. Summary judgment is therefore denied.

## IV. MOTION TO QUASH JURY TRIAL

The defendants also have moved to quash Brenimer's jury request, arguing that only "equitable remedies are . . . sought" by the plaintiff. As I indicated earlier, the parties disagree as to the date of Brenimer's restoration to an economic position comparable to that which he had with Great Western. This is properly an issue of fact for the jury to decide, as are the issues of whether Hunt was Brenimer's employer, whether age was a determinative factor in his discharge, and the amount and kind of his damages. In an action under ADEA a person is entitled to a jury trial on any issue of fact, "regardless of whether equitable relief is sought . . ." by that party. 29 U.S.C. § 626(c)(2); *Lorillard, Div. of Loew's Theatre, Inc., v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The motion to quash the jury request is therefore denied.

IT IS HEREBY ORDERED that the motion to dismiss as to defendant Hunt is denied; the motion for summary judgment is denied; the motion to quash the plaintiff's jury request is denied; and the motion for summary judgment on the plaintiff's second, third, sixth and seventh claims for relief is granted.