590 P.2d 513 (1978)
Patricia LAMPE, Plaintiff-Appellant,
v.
PRESBYTERIAN MEDICAL CENTER, a Nonprofit Colorado Corporation, James H. Henderson, Joyce Warren and Beverly Walsh, Defendants-Appellees.
No. 77-780.
Colorado Court of Appeals, Div. 2.
November 2, 1978.
Rehearing Denied November 24, 1978.
Certiorari Denied February 20, 1979.
*514 Sterling, Simon & Rubner, Roger L. Simon, Denver, for plaintiff-appellant.
Saunders, Snyder, Ross & Dickson, P. C., Henry C. Cleveland, III, Denver, for defendants-appellees.
KELLY, Judge.
This is an appeal from the trial court's dismissal of the fifth and sixth claims for relief of the plaintiff's complaint. Pursuant to C.R.C.P. 54(b), the trial court determined that there was no just reason for delay and directed the entry of final judgment. Plaintiff's first four claims for relief are being held in abeyance pending the outcome of this appeal. Plaintiff's fifth and sixth claims allege that her employment was wrongfully terminated, in contravention of several important public policies which have been or should be recognized in Colorado. The trial court concluded that these allegations did not state a claim for which relief could be granted, and ordered both claims dismissed, from which plaintiff appeals. We affirm.
In ruling on a motion to dismiss for failure to state a claim, both the trial court and the appellate court must assume the facts alleged in the complaint to be true. Bell v. Arnold, 175 Colo. 277, 487 P.2d 545 (1971); McDonald v. Lakewood Country Club, 170 Colo. 355, 461 P.2d 437 (1969). According to the complaint, Lampe, a licensed professional nurse, was hired by Presbyterian Medical Center in September of 1975 to serve for an indefinite term as head nurse of the intensive care unit. Until November 1976, it was Lampe's responsibility to determine the total number of nurse staffing hours required to operate her unit. At that time the hospital instituted a new "cyclic staffing" system. Cyclic staffing presented serious problems for Lampe and her staff, requiring them to work long overtime hours. Various meetings were held to attempt to resolve these and other problems.
In January 1977, the intensive care unit had a 80%- to 90%-bed occupancy rate which Lampe believed required an increase in the nursing staff. During the same period of time, however, the defendants requested that Lampe try to reduce the amount of overtime work by the nurses in her unit. Lampe decided she could not fully comply with this request without jeopardizing the care of her patients.
After further meetings did not resolve these problems, Lampe received a "Notice of Termination" signed by defendant Warren, the Director of Nursing Services at Presbyterian Medical Center. The Notice of Termination alleged that plaintiff was unable and unwilling to fulfill the requirements of her job description, that the nurses under her direction were in a state of dissatisfaction and unrest, that the quality of patient care in her unit had declined, and that she had failed to follow established procedures and to adhere to budgetary restrictions. Plaintiff then brought this suit, seeking both compensatory and punitive damages.
The trial court granted the defendants' motion to dismiss plaintiff's fifth and sixth claims, finding that they did not state valid claims for relief. The trial court's analysis of current Colorado law is correct. In the absence of special consideration or an express stipulation as to the duration of employment, an indefinite general hiring is terminable at will by either party. Justice v. Stanley Aviation Corp., 35 Colo.App. 1, 530 P.2d 984 (1974). Plaintiff does not dispute the trial court's conclusions; instead, she invites the Court of Appeals to expand Colorado tort law to cover this case. We decline to do so.

I.
Plaintiff's fifth claim for relief is based on § 12-38-201, et seq., C.R.S.1973, the *515 Colorado statute which defines and regulates the nursing profession. Plaintiff places heavy emphasis on the legislative declaration of policy in § 12-38-201:
"The general assembly hereby declares it to be the policy of this state that, in order to safeguard life, health, property, and the public welfare of the people of this state and in order to protect the people of the state of Colorado from the unauthorized, unqualified, and improper application of services by individuals in the practice of professional nursing, it is necessary that a proper regulatory authority be established and adequately provided for. The general assembly further declares it to be the policy of this state to regulate the profession of professional nursing through a state agency with the power to enforce the provisions of this part 2. Any person who practices as a professional nurse without qualifying for proper licensing and without submitting to the provisions of this part 2 endangers the public health thereby."
Plaintiff also relies on § 12-38-217, C.R.S. 1973, which gives the State Board of Nursing the power:
"To withhold, deny, revoke, suspend, or refuse to renew any license or permit or to place on probation a professional nurse, . . . upon proof that such person . . . has negligently or willfully acted in a manner inconsistent with the health or safety of persons under her care . . .."
Put simply, plaintiff alleges that she was discharged for acting in accordance with these statutes. She argues that the public policy enunciated in these statutes imposed on her a responsibility to take certain actions, and that her job was terminated because she attempted to fulfill that responsibility. Plaintiff calls this a "retaliatory termination"; she cites recent cases from other jurisdictions where complaints alleging such retaliatory terminations were held to state a cause of action and argues that this court should follow this "modern trend" in tort law.
In Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425 (1973), the Supreme Court of Indiana reversed the trial court's dismissal of a complaint alleging the plaintiff was discharged for filing a workmen's compensation claim. Similarly, in Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975), a plaintiff was allowed to recover damages after her employer fired her because she went on jury duty. In each of these cases, the court recognized the general common law rule that, in the absence of a contract or legislation to the contrary, an employer can discharge an employee at any time and for any cause, but held that the facts presented justified an exception to that rule. The court in Frampton held that where an employee "is discharged solely for exercising a statutorily conferred right" an exception to the general rule was required. In Nees, the court noted that the employee was subject to a statutorily imposed duty to serve on a jury when called. Indeed, refusing to serve as a juror could subject the employee to a fine. The court went on to note that "the jury system and jury duty are regarded as high on the scale of American institutions and citizen obligations. If an employer were permitted with impunity to discharge an employee for fulfilling her obligation of jury duty, the jury system would be adversely affected."
Thus, Frampton and Nees relied on a specifically enacted right and a duty, respectively. The court in each case held that the employer's retaliatory termination of the employee for attempting to exercise these statutory rights and duties demanded an exception to the common law rule concerning termination of employment at will.
In contrast, the plaintiff in this case relies on a broad, general statement of policy contained in a statute which creates the State Board of Nursing and which gives that Board the authority to discipline a nurse who negligently or willfully acts in a manner inconsistent with the health or safety of persons under her care. Given the general language used in the statute relied on in this case, we cannot impute to the General Assembly an intent to modify the *516 contractual relationships between hospitals and their employees in such situations. Neither can we impute an intent to create a claim for relief based on a mere possibility of disciplinary action under § 12-38-217, C.R.S.1973.

II.
According to plaintiff's opening brief, "The gravamen of plaintiff's Sixth Claim for Relief is . . . that the dismissal was retaliatory, and . . . that the reasons stated and memorialized for such termination were false." In a panoramic pleading referring generally to five different varieties of federal and state labor legislation, the plaintiff alleges a governmental policy of assuring that employers and employees "deal equitably, fairly and honestly with each other." She alleges that, therefore, the defendants have a duty to treat her fairly, and argues that her "wrongful termination" and the false reasons for that termination stated in her employment records breached that duty.
To the extent this claim differs from the fifth claim, it appears to state a claim for relief in libel. The second claim of plaintiff's complaint, which is still pending in the trial court, adequately covers this theory of recovery. To the extent that plaintiff's sixth claim alleges anything more than libel, however, it rests on the same grounds as the fifth claim and does not state a claim for which relief can be granted under Colorado law. In the absence of a contract or legislation to the contrary, an indefinite general hiring is terminable at will by either party. Justice v. Stanley Aviation Corp., supra.
The judgment of the trial court is affirmed.
ENOCH and STERNBERG, JJ., concur.