**Varick M. SMITH, a/k/a Pete Smith, Plaintiff,**

v.

**MONTGOMERY WARD & CO., INCORPORATED, an Illinois corporation, et al., Defendants.**

Civ. A. No. 83–JM–113.

United States District Court, D. Colorado.

July 15, 1983.

Steven F. Biskup, Andrew A. Brodkey, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for plaintiff.

Michael D. Nosler, Laura Ann Wing, Rothgerber, Appel & Powers, Denver, Colo., for defendant.

MEMORANDUM OPINION AND ORDER

JOHN P. MOORE, District Judge.

THIS MATTER comes before the Court on two separate motions to dismiss. The first is a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) filed on behalf of defendants Montgomery Ward & Co., Inc. ("Montgomery Ward") and Montgomery Ward & Co., Inc. Retirement Security Plan ("the Plan"). The second is a motion to dismiss for lack of personal jurisdiction and for failure to state a claim filed on behalf of defendant Gordon R. Worley ("Worley"). Worley also joins in the 12(b)(6) motion filed by the other defendants.

'Defendants' 12(b)(6) motion is addressed to five of plaintiff's seven claims. For the reasons stated below, this motion shall be granted in part and denied in part.

This is an action for damages brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* In addition to the federal

causes of action, plaintiff has alleged state law claims for breach of contract and outrageous conduct. Plaintiff seeks damages for loss of income, loss of employee benefits, including diminution of retirement benefits, unpaid wages based upon accumulated vacation time and earned time off, relocation costs, and pain and suffering.

■ The first issue raised in defendants' motion to dismiss is whether plaintiff may state a claim for punitive damages and damages for pain and suffering for alleged violations of the ADEA. Defendants assert that the language of the ADEA precludes recovery of general compensatory and exemplary damages.

Initially it should be noted that all of the circuit courts which have examined this question have held that punitive damages and pain and suffering damages are not available for violations of the ADEA. *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684 (7th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982); *Naton v. Bank of California*, 649 F.2d 691 (9th Cir.1981); *Slatin v. Stanford Research Institute*, 590 F.2d 1292 (4th Cir.1979); *Walker v. Pettit Construction Co., Inc.*, 605 F.2d 128 (4th Cir.1979); *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir.1978); *Dean v. American Security Insurance Co.*, 559 F.2d 1036 (5th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3rd Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). However, the decisions in this area are not uniform. Indeed, there are differing outcomes even among the decisions in this district. *Wise v. Olan Mills Incorporated of Texas*, 485 F.Supp. 542 (D.Colo.1980) (Carrigan, J.) (punitive damages and compensatory damages for pain and suffering available under the ADEA); *Kennedy v. Mountain States Tel. & Tel. Co.*, 449 F.Supp. 1008 (D.Colo.1978) (Kane, J.) (punitive damages available under the ADEA); *Hannon v. Continental National Bank*, 427 F.Supp. 215 (D.Colo.1977) (Fine-

silver, J.) (punitive damages not available under the ADEA). The United States Court of Appeals for the Tenth Circuit has not spoken on the issue at this time.

This issue is purely one of statutory construction. The remedies provisions of the ADEA are found in 29 U.S.C. § 626(b) and (c). The language at issue is as follows:

(b) ... Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided*, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section....

(c) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter ....

The issue is whether the language in § 626(b) and (c) which allows for "legal and equitable relief" means that plaintiff is entitled to the full panoply of legal relief or whether that language is limited by the definition of "amounts owing" and the provision for liquidated damages.

As a matter of statutory construction and policy, it is my opinion that the decisions which hold that exemplary damages and pain and suffering damages are unavailable under the ADEA represent the correct result. The legislative history of the ADEA has been thoroughly reviewed elsewhere, *see, e.g., Pfeiffer v. Essex Wire Corp., supra* at 687, and need not be repeated here. Suffice to say that if Congress had wanted to provide such remedies, it could have done

so, and the legislative history indicates it chose instead to provide for liquidated damages to compensate plaintiffs for losses over and above those for unpaid wages. Where Congress has chosen not to speak, the court should not substitute its judgment for that of the legislature. Moreover, those courts which have held that exemplary and general compensatory damages are unavailable have done so on the basis that to allow such remedies would interfere with the conciliation process provided for under the ADEA.[1] That reasoning appears to be sound as a matter of policy.

■ Defendants' motion to dismiss next addresses plaintiff's third claim for relief, in which plaintiff asserts that the alleged wrongful discharge constituted a breach of his employment contract. Defendants argue that the law in both Colorado and Florida[2] is clear that an employment contract for an indefinite term is terminable at will and that there can be no breach of contract for terminating an employment contract for an indefinite term. *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978); *Justice v. Stanley Aviation Corp.,* 35 Colo.App. 1, 530 P.2d 984 (1974); *Forde v. Royal's Inc.,* 537 F.Supp. 1173 (S.D. Fla.1982). Defendants' statement of the law is correct. The general rule is that in the absence of special consideration or an express stipulation as to the duration of employment, an indefinite general hiring is terminable at will by either party. *Lampe*

*v. Presbyterian Medical Center, supra,* 590 P.2d at 514. Some states have created exceptions to this general rule for situations where a termination is alleged to be in bad faith or in violation of a stated public policy. *See Savodnik v. Korvettes, Inc.,* 488 F.Supp. 822 (E.D.N.Y.1980). However, it appears at the present time that neither Colorado nor Florida has recognized these exceptions.[3] Under current state law, plaintiff's allegations here are insufficient to state a claim for breach of employment contract or wrongful discharge.

■ The next issue raised by the motion is whether plaintiff has stated a claim for outrageous conduct. The question of whether a certain defendant has caused intentional or reckless infliction of emotional distress is generally one for the jury to determine. *Enright v. Groves,* 39 Colo.App. 39, 560 P.2d 851 (1977). However, there is a certain threshold level of conduct that must be established for plaintiff to state a cause of action, *Rawson v. Sears, Roebuck & Co.,* 530 F.Supp. 776 (D.Colo.1982); and the initial determination of whether the facts alleged state a cause of action is a question of law. *Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978); *First National Bank in Lamar v. Collins,* 44 Colo.App. 228, 616 P.2d 154 (1980).

In *Rawson v. Sears, Roebuck & Co., supra,* Judge Kane reviewed the Colorado cases involving outrageous conduct and concluded that in most cases such a claim

---

1. The remedies provision of the ADEA, 29 U.S.C. § 626(b) also provides "[b]efore instituting any action under this section, the Secretary shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." It has been reasoned that the conciliation process is aided where the outer limits of plaintiff's potential damages are defined and that the conciliation process would be hindered by injecting great uncertainty into the damages issue by allowing the recovery of punitive and pain and suffering damages. *See Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3rd Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

2. Plaintiff was discharged from his job in Florida and then moved to Colorado to seek new employment. The question of whether Colorado or Florida law applies need not be addressed at this time.

3. In *Lampe v. Presbyterian Medical Center, supra,* the Colorado Court of Appeals indicated that an exception to the general rule might be recognized where an employee is terminated for exercising a statutorily created right or duty. Plaintiff here has alleged no facts which would bring this case within that rule.

would be cognizable only where the defendant has engaged in a *pattern of conduct* that either has intended to cause or recklessly did cause severe emotional distress.[4] He also stated that "in many, if not most, civil lawsuits the plaintiff believes that the defendant's conduct has been outrageous .... Yet very few give rise to a cognizable claim for intentional infliction of emotional distress." *Id.* at 780.

█ In the present case, it is questionable whether plaintiff has alleged a sufficient pattern of conduct on the part of defendants to state a claim for outrageous conduct. The conduct alleged is that defendants discharged plaintiff from his job; that defendants caused plaintiff's job performance rating to be lowered, thereby disqualifying him from certain benefits; that defendants withheld information regarding plaintiff's benefits; and that defendants failed to make timely payments to plaintiff under the retirement plan. In my opinion, these acts barely rise to the level of "outrageous conduct."[5] However, these issues are mainly factual, and the conscience of the community—the jury—must be brought to bear, and the issue should not be resolved by the court. Thus, it is my conclusion that defendants' motion to dismiss plaintiff's claim for breach of contract and plaintiff's claim for outrageous conduct be denied.

█ Finally, defendant has moved to dismiss plaintiff's sixth and seventh claims for relief. These are claims for unjust enrichment on the grounds that plaintiff is entitled to compensation for accrued vacation pay and "earned time off." Whether plaintiff has a right of compensation for these amounts depends upon the express or implied terms of the employment contract. 53 Am.Jur.2d *Master and Servant* §§ 71, 80. Additionally, customs and usages can give rise to an implied contractual right to such compensation. *Sabin v. Willamette-Western Corp.,* 276 Or. 1083, 557 P.2d 1344 (1976); *City of Webster Groves v. Inst. & Public Employees Union,* 524 S.W.2d 162 (Mo.App.1975). Plaintiff has stated a claim for compensation in connection with his contract of employment, and he is entitled to establish his right to compensation on the basis of custom and practice in the particular business. Therefore, plaintiff's sixth and seventh claims shall not be dismissed.

Next, defendant Worley has moved to dismiss the complaint on the grounds that there is no personal jurisdiction over him in Colorado. Worley is an officer of defendant Montgomery Ward and a trustee of the defendant Plan. Claims are asserted against him in both his official capacities and his individual capacity.

Plaintiff argues that jurisdiction over Worley is substantiated on the grounds of his status as trustee of the Plan. ERISA contains a nationwide service of process provision, 29 U.S.C. § 1132(e)(2), and Worley was served in Illinois with summons addressed to him in both his individual and official capacities. Plaintiff argues that once personal jurisdiction is acquired over Worley under ERISA, then, under the doctrine of pendent personal jurisdiction, there is jurisdiction for the related ADEA and state law claims.

---

**4.** With regard to the question of whether a single act could establish a claim for outrageous conduct, Judge Kane stated: "While it is possible for a single, isolated activity to be a sufficient basis for a cause of action, it only will be so where a public or quasi-public official has severely abused his discretion or a private individual has blatantly and severely harassed another." *Id.* at 780.

**5.** A description of the tort of outrageous conduct or intentional or reckless infliction of emotional distress is found in *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970):

" * * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which a recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " [quoting comment d of the Restatement (Second) of Torts § 46 (1965) ].

It can be inferred that Congress, in including the broad venue and service of process provisions in ERISA, intended to confer personal jurisdiction to the widest extent possible within the confines of due process. *See Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir. 1972) (construing nationwide service of process provision of the Securities Exchange Act of 1934). However, it is also clear that Congress can extend the boundaries of personal jurisdiction no further than permissible under constitutional standards. Thus, the determination of whether jurisdiction over Worley is proper begins and ends with an analysis of whether it is appropriate for Worley to be "haled into court" in Colorado, *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980), and whether requiring Worley to come to Colorado to defend this action offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This analysis requires an inquiry into Worley's contacts with the forum state and a determination of whether those contacts satisfy the "minimum contacts" test set forth in *International Shoe.*

■ When a defendant has raised the question of personal jurisdiction, the court must determine whether the complaining party has, by pleading, affidavit, or otherwise, carried its burden of producing factual allegations which, understood at face value, establish jurisdiction over the movant. *Baldridge v. McPike, Inc.,* 466 F.2d 65, 68 (10th Cir.1972); *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir.1969); *Hoster v. Monongahela Steel Corp.,* 492 F.Supp. 1249 (W.D.Okl.1980). This burden will not be sustained by factual allegations contained in a pleading when these allegations have been contradicted by affidavit. *Data Disc., Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280 (9th Cir.1977); *Baldridge v. McPike, Inc., supra.* In the present case, Worley has submitted an affidavit, and plaintiff has countered the affidavit with one letter.

■ As factual background it should be noted that according to the complaint, plaintiff was terminated from his employment at a time when he was living and working in Florida. Subsequently, he moved to Colorado to seek other employment. Following, or contemporaneously with, his move to Colorado, plaintiff made inquiries about his entitlement to benefits under the retirement security plan. Plaintiff has submitted a letter dated July 29, 1982, which summarizes his inquiries to the Plan administrator; this letter indicates that defendant Worley, as trustee of the Plan, received a copy of plaintiff's letter. Plaintiff's argument is that Worley's contact with Colorado was his failure to act upon this letter. In other words, plaintiff asserts that Worley had a fiduciary duty to see that plaintiff's questions were answered and that plaintiff received his benefits under the Plan in an adequate and timely fashion. According to plaintiff, Worley's alleged failure to fulfill this duty resulted in a denial of plaintiff's rights under the Plan *in Colorado,* thereby subjecting Worley to the jurisdiction of the court here.

In answer to plaintiff's assertions, Worley has submitted an affidavit which states that he resides in Illinois, that he has been an Illinois resident for some forty-two years, that he has no business contacts with Colorado, and that he transacts no business in Colorado in his personal capacity.

Thus, the jurisdictional facts before the court at this time demonstrate that defendant Worley has no business or personal contacts in Colorado. There are no facts indicating that he owns property in Colorado, that he maintains an office in Colorado, that he travels to Colorado, or even that he has had telephonic conversations with plaintiff or with any Montgomery Ward employees in Colorado. It might be assumed that the Plan is administered in Colorado and that, in connection with his duties as Plan

trustee, Worley's business activities are related to Colorado. However, there are no facts in the record upon which to make a finding of any such contacts. The only relationship that has been shown is that Worley is a trustee of the Plan; the only "activity" upon which the jurisdictional question can be answered is that Worley allegedly failed to respond to plaintiff's letter addressed to him in Illinois.

In the present case, I can find no basis upon which to find that this court has personal jurisdiction over defendant Worley.

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State .... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Here, there is only the unilateral activity of plaintiff of sending inquiries to defendant Worley in Illinois which form the basis of plaintiff's assertion of jurisdiction. The record is devoid of any evidence of any purposeful activity on the part of Worley by which Worley can be said to have availed himself of the privilege of conducting activities in Colorado. Therefore, I must conclude that this court has no personal jurisdiction over Worley.

Worley's motion to dismiss for lack of personal jurisdiction must be granted. Because I conclude that there is no personal jurisdiction over Worley, Worley's other grounds for dismissal of the claims against him need not be addressed.

Accordingly, it is

ORDERED that defendants' motion to dismiss for failure to state a claim be granted in part and denied in part. Plaintiff's state law claim for breach of employment contract and plaintiff's claims for punitive damages and pain and suffering damages under the ADEA are dismissed. Defendant Worley's motion to dismiss for lack of personal jurisdiction is granted.