David M. BROOKS, Plaintiff,

v.

TRANS WORLD AIRLINES,
INC., Defendants.

Civ. A. No. 82–K–1185.

United States District Court,
D. Colorado.

Oct. 18, 1983.

Michael P. Serruto, Myrick & Newton, P.C., Denver, Colo., for plaintiff.

Elliot H. Shaller, New York City, Edward W. Stern, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff's first amended complaint states six claims for relief, chief among which is his claim that TWA furloughed him in violation of the Age Discrimination in Employment Act and the Fair Labor Standards Act, 29 U.S.C. § 626(b), 29 U.S.C. § 216(b). Jurisdiction is predicated upon 29 U.S.C. § 626(b) and 28 U.S.C. § 1137. The remaining five claims seek damages and injunctive relief for breach of contract, negligence, fraud, negligent misrepresentation and wrongful discharge. From the record before me, I find the following prolusory facts.

Brooks first accepted employment with TWA in 1962 in California. At the time, his employment application included the following language:

> [I]f given employment, I hereby agree that such employment may be terminated by the Company at any time without advance notice and without liability to me for wages or salary, except as may have been earned prior to such termination.

Brooks was also introduced to TWA's Management Policies and Procedure Manual (MP & P), a handbook of

> guidelines and instructions to management in carrying out their responsibilities, authority and activities to achieve the goals established for the Corporation.

*MP & P, § A.1, Defendant's Exhibit B.* After being hired, Brooks was advised that

> the provisions of the MP & P controlled the procedure in which the majority of [his] functions were to be handled, were

to be followed by [him] as a condition of employment and [that] failure to do so could result in termination or disciplinary action.

*Brooks Affidavit* at 1.

Brooks transferred to Colorado in 1976 where he worked as a customer service agent, a non-management position. In 1977, Brooks became an Agent in Charge—Cargo, still based in Denver. He received a management title on February 26, 1979, when he accepted a promotion to the position of Senior Sales Representative (SSR). In large part, Brooks was responsible for the solicitation of cargo space in a three state region encompassing Colorado, and parts of Wyoming and New Mexico.

In late 1979, TWA abolished the SSR position, provided Brooks with a week's worth of additional training, and gave him a new job number and title, Account Manager—Cargo (AMC). Brooks received no "promotion" or pay raise as such with the new position: he continued to be paid $2,000 per month. The new position, however, did carry a higher pay grade than the old. In October, 1981, Brooks was informed that his position would be eliminated and that he would be furloughed. At the time, the MP & P contained the following displacement clause:

An employee occupying a management position which is eliminated and who does not qualify under Paragraph 4.a. preceding, will be permitted to exercise seniority to displace into the LAST HELD nonmanagement position in the metropolitan area, seniority permitting, IF THE EMPLOYEE ENTERED THE MANAGEMENT POSITION DIRECTLY FROM A NONCONTRACT NONMANAGEMENT POSITION.

MP & P, § 10.49.02C4(b), (emphasis in original). TWA refused to permit Brooks to return to his earlier position of Agent in Charge—Cargo. TWA reasoned that Brooks had not entered the Account Manager position directly from a non-management position, as required by the MP & P. TWA told Brooks that he had entered the management position from another man-agement position, Senior Sales Representative, and thus could not exercise his rights under the displacement provision. Before Brooks left TWA's employ, he "oriented" a 27 year old account manager to assist him in taking over 80% of Brook's sales territory.

Before me are cross-motions for summary judgment on Count II (breach of contract), TWA's motion for summary judgment on counts I, III and IV, as well as Brook's motion in limine. For the reasons discussed below, I deny the cross-motions for summary judgment and the motion in limine. I also deny in part and grant in part TWA's motion for summary judgment.

## I.  BREACH OF CONTRACT

■ TWA makes two arguments in support of its motion. First, it asserts that its own personnel manual creates no contractual rights which are enforceable against it. Second, it claims that Brooks did not enter his "management position [as Account Manager—Cargo] directly from a non-contract nonmanagement classification," within the meaning of the MP & P.

The plaintiff claims that TWA is estopped to deny that the MP & P creates contract rights, since Brooks, when he was furloughed, was told only that the MP & P did not permit him to displace. Brooks also argues that the MP & P creates enforceable contract rights in his favor.

I do not think that TWA is estopped to deny the enforceability of the MP & P. Brooks claims that TWA furloughed him for the single reason that he did not qualify under the MP & P's displacement provisions. Brooks relies on the general rule that one who has

given a definite reason for his conduct and decision about a matter in controversy, cannot, after litigation has begun, change his ground and put his conduct upon another and a different consideration.

28 Am.Jur.2d, *Estoppel* § 72 (1966). The facts are disputed about whether and when TWA changed its position during the

course of the litigation. I am satisfied, however, that there has been no prejudice to Brooks and that TWA acted without any intent to deceive him. The general rule quoted above can only be understood in

> light of the principles governing equitable estoppel, including the element that an assertion or act to constitute an estoppel must be *wilfully made* or *done with the intention to deceive the other party,* and that it is of doubtful application in any case unless the former position is inconsistent with the position adopted after the litigation *or unless the adverse party has been misled or prejudiced* by the change of attitude.

28 Am.Jur.2d *Estoppel* § 72. (Emphasis added.)

## CONTRACT RIGHTS IN AN EMPLOYMENT MANUAL

■ It has long been the rule, in this state and others, that a discharged employee has no recourse against his or her employer in the absence of a fixed term contract, unlawful discrimination or a specific constitutional right. *Justice v. Stanley Aviation Corp.,* 35 Colo.App. 1, 530 P.2d 984 (1974); *Amaan v. City of Eureka,* 615 S.W.2d 414 (Mo.1981); *Johnson v. National Beef Packing Company,* 220 Kan. 52, 551 P.2d 779 (1976); *Lynas v. Maxwell Farms,* 279 Mich. 684, 273 N.W. 315 (1937); *Knudson v. Green,* 116 Fla. 47, 156 So. 240 (1934); *Martin v. New York Life Ins. Co.,* 148 N.Y. 117, 42 N.E. 416 (1895). The rule is said to have its origin as "an adjunct to the law of master and servant in England...." *Wiener v. McGraw Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 195, 443 N.E.2d 441, 443 (1982); Feiger, *"Employment at Will" and the Discharged Employee in Colorado,* 12 Colo.Lwyr. 733 (1983).

■ Judicial reluctance to interfere with "at-will" contracts stems from a perceived lack of definiteness, mutuality and consideration. *Johnson v. National Beef Packing Co.,* 551 P.2d at 782; *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 628

(Minn.1983). In a recent decision from Florida, the district court of appeals said:

> [w]e see no justification to depart from long established principles that an employment contract requires definiteness and certainty in its terms. An employee's entitlement to a particular term of employment or to particular salary levels on the basis of criteria more subject to misunderstanding and dispute than definite terms in an employment contract is not ... [within] the province of a court of law.

*Muller v. Stromberg Carlson Corp.,* 427 So.2d 266, 269 (Fla.App. 2 Dist.1983).

In the past 50 years, however, courts have shown an increased willingness to step between employer and employee. They have typically either recognized actions for wrongful discharge in violation of public policy, *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980), a covenant of good faith in employment contracts, *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980), or found an implied contract in a personnel manual or an employer's specific policies. *Toussaint v. Blue Cross Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980). It is only the latter theory of implied contract with which this case is concerned.

The leading case is *Toussaint, supra.* There, an employee specifically inquired regarding job security when he was hired. He was told he would be with Blue Cross as long as he did his job. Toussaint was also given a Blue Cross personnel manual which said that

> the disciplinary procedures applied to all Blue Cross employees who had completed their probationary period and that it was the 'policy' of the company to release employees 'for just cause only.'

292 N.W.2d at 884. The *Toussaint* court held that

> 1) a provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable although the contract is not

for a definite term—the term is 'indefinite,' and

2) such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements.

292 N.W.2d at 885. The *Toussaint* rationale has been followed in an impressive number of jurisdictions.[1] It has also been criticized and several courts have specifically refused to follow it.[2]

■ Colorado has never addressed the issue. It has, however, recognized a tort of wrongful discharge under limited circumstances. In *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513, 514 (1978), the court of appeals restated the general rule that

[i]n the absence of special consideration or an express stipulation as to the duration of employment, an indefinite general hiring is terminable at will by either party.

This rule does not apply where the employee is discharged for exercising a "specifically enacted right [or] duty," such as the right to file for workmen's compensation or the duty to serve on a jury. 590 P.2d at 515. *And see Rawson v. Sears Roebuck & Co.,* 530 F.Supp. 776, 782 (D.Colo.1982) (Kane, J.). The *Lampe* formulation is narrower than that approved in *Tameny* or similar cases.[3]

■ I am aware that the perceived lack of consideration poses a problem for many. *See* Note, "Protecting At Will Employees Against Wrongful Discharge: A Duty to Terminate in Good Faith," 93 Harv.L.Rev. 1816, 1817 (1980) cited in *Muller v. Stromberg Carlson Corp., supra,* 427 So.2d at 270. I do not see this as a difficulty.

In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.

*Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983). *And see Toussaint, supra,* 292 N.W.2d at 892; *Pugh v. See's Candies, Inc.,* 116 Cal. App.3d 311, 324, 171 Cal.Rptr. 917, 924 (1981); *Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 153 (Mo.App.1983). *Accord, Lampley v. Celebrity Homes, Inc.,* 42 Colo. App. 359, 594 P.2d 605, 608 (1979). Brooks accepted employment at TWA with a clear understanding that all or nearly all of management decisions made by or concerning him would be made in accordance with the Management Policies and Procedure Manual. According to Brooks, he could have been disciplined or terminated for *not* following the MP & P. Throughout his career with TWA Brooks consulted and relied

1. *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983); *Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.App.1983); *Simpson v. Western Graphics Corp.,* 293 Or. 96, 643 P.2d 1276 (1982); *Hamby v. Genesco, Inc.,* 627 S.W.2d 373 (Tenn. App.1981); *Carter v. Kaskasia Community Action Agency,* 24 Ill.App.3d 1056, 322 N.E.2d 574 (1974); *Langdon v. Saga Corp.,* 569 P.2d 524 (Okl.App.1976); *Wagner v. Sperry Univac, Div. of Sperry Rand Corp.,* 458 F.Supp. 505 (E.D.Pa. 1978); *Piacitelli v. Southern Utah State College,* 636 P.2d 1063 (Utah 1981) (tenure denial).

2. *White v. Chelsea Industries, Inc.,* 425 So.2d 1090 (Ala.1983); *Gates v. Life of Montana Ins. Co.,* Mont., 638 P.2d 1063 (1982); *Johnson v.*

*National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976); *Muller v. Stromberg Carlson Corp.,* 427 So.2d 266 (Fla.App. 2d Dist.1983); *Edwards v. Citibank, N.A.,* 100 Misc.2d 59, 418 N.Y.S.2d 269 (1979).

3. *Ward v. Frito-Lay, Inc.,* 95 Wis.2d 372, 290 N.W.2d 536 (1980); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974). The cases are collected and discussed in Note, "Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception," 96 Harv.L.Rev. 1931, 1936–37 (1983).

upon the MP & P in his daily decisions and promotions. His explicit willingness to continue to work for TWA under the terms and conditions set out in the MP & P create a basis for enforcing the MP & P's displacement rights against TWA.

One of the defendant's arguments against a *Toussaint* approach is that *Toussaint* should not be applied "beyond the discharge situation involved in that case to a layoff and/or reduction in force situation, like the one involved in this case." *See Grubb v. W.A. Foote Memorial Hospital Inc.*, 533 F.Supp. 671, 672–3 n. * (E.D.Mich. 1981). TWA's concern that it not be shackled with a workforce it is unable to reduce without fear of wrongful discharge litigation is understandable, if misplaced. By holding that the MP & P creates rights enforceable against TWA, I am not saying that there is any covenant of fair dealing or right not to be discharged without cause. Those issues are not before the court. This is particularly important here, because Brook's employment application in 1962 included the provision quoted above, at 2, permitting the company to terminate him at any time without advance notice. TWA's MP & P can only be read as a modification of this original application, requiring the company to permit Brooks to exercise whatever displacement rights he had when furloughed.

■ Although I hold that Brooks had enforceable contract rights in the MP & P, summary judgment is still impermissible. There is a factual dispute about whether the Account Manager position was a second management position within the meaning of the MP & P. Brook's affidavit establishes that every Senior Sales Representative underwent training to become an Account Manager, that every SSR successfully completed the training and testing, and that every SSR became an Account Manager. No pay increase accompanied the job change, only an increase in scale. Summary judgment is not appropriate where there is a disputed question of material fact. Whether the move from Senior Sales Representative to Account Manager

is one within the ambit of the MP & P and whether Brooks occupied one or two management positions are questions better left for a jury.

## II

TWA has also moved for summary judgment on counts III and IV. TWA's only argument on count III (negligence) turns on the asserted absence of an enforceable contract right between TWA and Brooks. Since I have ruled that the MP & P does create contractual rights, I deny the motion for summary judgment on Count III as well.

TWA argues that summary judgment is required on the fraud count because Brooks has not pleaded the count with particularity, and because TWA did not misrepresent to Brooks what his displacement rights were under the MP & P. It also argues that if any misrepresentations were made, Brook's reliance on them was unjustified.

■ The appropriate response to a perceived lack of particularity in pleading a fraud claim is a motion to dismiss under Rule 9, F.R.Civ.P., or a motion for more definite statement under Rule 12. It is disingenuous for TWA to claim at this late date that it does not have sufficient notice.

TWA also argues that it was "readily apparent that [Brooks] was receiving a promotion, or at least a new classification with increased responsibilities." *Defendant's Brief* at 20. Brooks disputes the "apparentness" of the move to Account Manager as a *second* management position. He thought that he could lose his displacement rights only by accepting a second promotion to another management position. TWA purportedly misrepresented to Brooks that he was still in his first management position. He relies on defendant's exhibits I and J as establishing these misrepresentations.

Exhibit I appears to be a record of Brook's employment history at TWA. The category of the change from Senior Sales Representative to Account Manager is giv-

en as "job number change." It is not described, as it could have been, as a promotion, a re-evaluation of positions, a reorganization or a lateral transfer. Exhibit I also shows that TWA treated Brook's earlier move to Senior Sales Representative as a promotion. As indicated earlier, this was Brook's first management position. Exhibit J, a TWA Employee Status Report, establishes that TWA treated the move as a change of job number and title with an increased pay grade, but no increase in salary.

■ TWA claims that "from the undisputed facts in this case, it is plain that TWA did not make any representations to plaintiff that he was still in his first management position." I disagree. The evidence is not all that strong that Brooks was deceived by Exhibits I and J into thinking that he could only lose his displacement rights by being promoted a second time. It is strong enough—especially since TWA's intent and the justifiability of Brook's reliance are at stake—to create a dispute as to material facts. Accordingly, summary judgment is denied as to count IV, as well.

### III. ADEA CLAIM

■ In an age discrimination suit, the Tenth Circuit uses the three stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Schwager v. Sun Oil Co.*, 591 F.2d 58 (10th Cir.1979). At the first stage the plaintiff must be able to prove a *prima facie* case of discrimination. He must show that:

1. He was within the protected age group;
2. He was doing satisfactory work;
3. He was discharged despite the adequacy of his work;

and

4. His position was filled by younger employees.

591 F.2d at 61. In *Schwager*, the Tenth Circuit admonished that

[i]n applying these standards, however, it is emphasized that they are merely guidelines and not inflexible, rigid approaches to determine whether a *prima facie* case has been established.

591 F.2d at 61 n. 1. Like other courts that have addressed the issue, I am not convinced that the fourth element, above, is very useful or helpful in a reduction in force situation as is presented here, as opposed to a straight termination. The Court of Appeals for the Fourth Circuit noted:

[a]lthough a plaintiff in a reduction-in-force case normally is unable to show that he was replaced by [someone outside the protected group], he can nevertheless establish a *'prima facie* case' by producing some other evidence that the employer did not treat age neutrally.

*EEOC v. Western Electric Co., Inc.*, 713 F.2d 1011, 1014–15 (4th Cir.1983). The Fifth Circuit has formulated a *prima facie* case in a reduction in force situation as follows:

1. The plaintiff must be within the protected age group and he must have been adversely affected—discharged or demoted—by the defendant's employment decision;
2. He must show he was qualified to assume another position at the time of his discharge or demotion; and
3. He must produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision.

*Baldwin v. Sears Roebuck and Co.*, 667 F.2d 458, 461–2 (5th Cir.1982).

■ Brooks correctly points out that *Schwager* involved a reduction in force. He argues that he must only satisfy the fourth *Schwager* requirement in order to prove a *prima facie* case, since the other elements are not in dispute. To that end, he offers his affidavit that 80% of his former sales territory was assumed by a 27 year old employee. From this, a factfinder could reasonably conclude that TWA intended to discriminate against Brooks. Under either the *Schwager* or the Fifth

Circuit formulation, Brooks has made out a *prima facie* case.

At the second stage of analysis, the employer must be given an opportunity to show that reasonable factors other than age were responsible for the termination or furlough. TWA has submitted an affidavit of P.E. Boucher, its regional vice-president for the western region. Boucher's duties include cost analysis and projection, and assuring "that sufficient revenue is being generated from the various functions and departments of the region to comply with the revenue generation requirements that are established by the Company." Boucher became regional vice-president on October 1, 1981. Almost immediately he determined that a reduction in force had to be carried out, as part of which Brook's job would be eliminated. The affidavit continues:

> I arrived at that decision by analyzing the amount of revenue that was being generated from [Brook's] position; I concluded that not enough revenue was being generated from the position to justify its retention. When I made the decision to eliminate the Account-Manager position in Denver, I did not know the age of the person occupying that position. At the time I did not know the plaintiff, nor do I presently know him.

Brooks attacks the sufficiency of TWA's proof at this second stage of analysis. He suggests that TWA has not met its burden of showing that "a thorough evaluation of all employees concerned was genuinely and honestly attempted ..." *Mastie v. Great Lakes Supply Corp.*, 424 F.Supp. 1299, 1316 (E.D.Mich.1976). Brooks argues that the Boucher affidavit, being limited to a revenue cost analysis, fails to explain why Brooks was furloughed over other, similarly situated, management employees. For purposes of summary judgment TWA has met its burden of showing that reasonable factors other than age were the basis of the furlough.

In the third and final stage of analysis, a plaintiff is given "an opportunity to refute the adequacy of the employer's explanation and to show that the stated reasons are merely pretextual." *Brenimer v. Great Western Sugar Co.*, 567 F.Supp. 218, 222 (D.Colo.1983) (Kane, J.); *Mohammed v. Callaway*, 698 F.2d 395 (10th Cir.1983). Brooks evidence is at its weakest here. Brooks has submitted an affidavit from a fellow Account Manager, Oris Petri, who was furloughed and then permitted to displace to his former position of Agent in Charge. Even assuming this is true, and TWA disputes Petri's version of the facts, I do not see that age as a determinative factor in Brook's furlough is implicated. Petri is two years older than Brooks. *Defendant's Exhibit I.*

At one point in the summary judgment proceeding, Brooks alleged that two other management employees, Oliver and Johnson, were furloughed and then offered different positions. TWA's exhibits, however, which Brooks does not dispute, show that Oliver was not allowed to displace, but rather reapplied and was rehired for another position, and that Johnson was never furloughed, but merely transferred into another position. Again, Brooks has not met his burden of showing that age was a determinative factor—Johnson was 40 and Oliver 39 at the time Brooks was furloughed. Nor has Brooks come forward with the kind of statistical analysis used and approved in *Mohammed v. Callaway*, above, 698 F.2d at 399. He has averred in his brief that 60% of the account managers who were furloughed during the reduction in force were over the age of 40. Even if true, this fact, standing alone, does not persuade me that Brooks has been the victim of intentional discrimination. I cannot infer age discrimination from evidence "that does no more than suggest it as a possibility." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 245 (4th Cir.1982).

In the absence of specific facts showing that a genuine factual issue remains for trial, I must grant the defendant's motion for summary judgment. *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir.1979). Brooks would have me deny TWA's motion without preju-

dice to renew, in anticipation of "documents ... [which] may provide statistical evidence of a general pattern of age discrimination...." I decline the invitation. Nearly two months have elapsed since Brooks made that suggestion and still no statistical evidence has been filed. The motion for summary judgment as to Count I is accordingly granted.

## IV. MOTION IN LIMINE

Brooks, by this motion, seeks to preclude the admission of his employment application and any testimony by any defense witness characterizing the change to Account Manager as anything but a promotion. Brooks hopes to exclude the language quoted above which permits the company to terminate him without advance notice and without liability for wages except those which have already been earned by him. *See* above at 2.

His primary argument to exclude this language is that the MP & P operates either as a novation or amendment to the employment application, thus bringing into play § 10.51.01 of the MP & P. This section defines termination of employment on the last day worked *in the event of retirement, resignation or failure to work.* Brooks argues that the more explicit language of this section preempts and supersedes the language of the release in the application. Alternatively, he suggests that it operates to modify the unilateral contract of the at-will employee, "thereby providing for discharge for cause and eliminating any waiver or release of claims." *Motion in Limine at 3.*

I disagree. I have already held that the MP & P is an amendment which modifies the unilateral contract offered to Brooks as an at-will employee. But it is a settled principle of interpretation that a more explicit provision in a contract governs over one less explicit. Section 10.50.-01 deals only with terminations. Brooks was not terminated, he was furloughed under the provisions of section 10.49.024C(b), which provides him with explicit displacement rights. Section 10.50.01 has no bearing on the issues of this case, in the face of the more explicit provisions in 10.49.024C. Although I am not convinced of the relevance of the application form, I am not prepared at this point to preclude its admission. Plaintiff should feel free to renew his motion at a later date.

Brooks also seeks to limit oral testimony characterizing his job change as anything but a promotion on the grounds that TWA did not characterize the change as anything but a promotion until after litigation commenced. This equitable estoppel argument is identical to that which Brooks made earlier, when he sought to prevent TWA from denying that the MP & P was an enforceable contract. For the reasons expressed here, see part I, I deny the above motion in limine as to the oral testimony Brooks seeks to preclude.

IT IS HEREBY ORDERED that the cross-motions for summary judgment on Count II are denied, that the defendant's motion for summary judgment are denied as to Counts III and IV and granted as to Count I, and the plaintiff's motion in limine is denied.