Serafin **GARCIA, Plaintiff-Appellant,**

v.

**AETNA FINANCE COMPANY, a Delaware Corporation, Defendant-Appellee.**

No. 81–1260.

United States Court of Appeals, Tenth Circuit.

Dec. 17, 1984.

Leo T. Zuckerman and Michael J. Kleinman, Zuckerman & Sobol, Denver, Colo., on the brief for plaintiff-appellant.

Gregory A. Eurich, John M. Husband, Holland & Hart, Denver, Colo., on the briefs for defendant-appellee.

Before HOLLOWAY, Chief Judge, and SETH and SEYMOUR, Circuit Judges.

PER CURIAM.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

In this diversity case, plaintiff-appellant appeals the granting of defendant-appellee's motion for summary judgment. Plaintiff argues that the employment relationship between plaintiff and defendant was for a definite period of time and, even if construed to be for an indefinite period of time, the employment relationship was not terminable at will by the employer. We disagree and affirm.

I

In part, the district court stated in its order as follows:

From the uncontroverted facts set out in the pre-trial order and the deposition of plaintiff, it is established that plaintiff was employed by GAC Finance from 1956 through 1975. In 1975 defendant acquired the branch offices of GAC to which plaintiff was assigned as regional branch manager; the employment continued under the same conditions after defendant's acquisition; he retained the same job title, the same responsibilities and his employment was governed by the same operational principles. Shortly after defendant acquired the GAC facilities and plaintiff began his employment with it, defendant implemented certain new policies and procedures which were disseminated by way of a policy manual sent to plaintiff and other regional branch managers. Among the policies set out in the manual was the termination policy; plaintiff did not negotiate those policies in any way and he was neither asked for, nor did he give any input in the formulation of such policies.

Therefore the termination policy was a unilateral expression of policy by defendant and the policy and the procedure relating thereto was in no way negotiated between the parties.

I R. 60.

Whether the termination policy was bargained for between Garcia and Aetna and mutually agreed upon or whether the termination policy was a unilateral expression of Aetna policy and procedure was a genuine issue of material fact listed in the Stipulated Pre-Trial Order filed December 4, 1980. I R. 38. However this issue was resolved by deposition testimony of plaintiff referred to in defendant's Memorandum in Support of Summary Judgment, and this testimony was uncontroverted.[1] *Id.* at 45–46. Therefore, there was no issue as to any material fact and summary judgment was appropriate on this issue. Fed. R.Civ.P. 56(c).

On appeal plaintiff contends that the employment relationship between plaintiff and defendant was for a definite term and, as such, plaintiff was not an employee "at will." Plaintiff says that the employment policy manual sets forth terms of the employment agreement and is part and parcel of the acceptance of an application for employment by any prospective employee of defendant and that this policy manual expressly provides for a fixed term of employment by requiring annual appraisals. Plaintiff also says that defendant's rehiring on a salary based on a yearly amount also implied a fixed term of employment. Defendant contends that the employment policy manual was a unilateral expression of defendant's policy and created no employment contract between the parties.

■ Plaintiff states that at no time during his employment with defendant or its predecessor was there any written agreement of employment other than defendant's annual performance appraisals. Brief of Appellant 5. Plaintiff says that pursuant to the employment policy manual, which contained the termination policy of defendant, annual performance appraisals of employees such as plaintiff were made to determine the employee's salary for the next year and whether said employee would be retained for an additional one year. *Id.* at 4. As the district court found, defendant's termination policy set forth in the employment policy manual was a unilateral expression of policy by defendant.[2]

---

1. The following deposition testimony was given by plaintiff:

Q Well, listen to my question: Soon after you started working for Aetna you got as you said a new set of policies, a new policy manual from Aetna?

A I got a manual, yes—

Q That would have necessarily been a period of time after you started working for Aetna? You worked for them for a while and then you got the new policies?

A Well, we got the manual maybe not the first day I did work for Aetna, but we got it—

Q Soon after?

A—soon after.

Q That was unilateral by Aetna, you didn't have any input? You didn't negotiate anything in the manual, you just got the manual and were told to use it, right?

A That's right.

Q That manual would have included in it a termination policy, right?

A Yes, it would.

II R. 18. With regard to revisions of the policy manual plaintiff testified:

Q Now, as to both ... [termination policies] that we have been talking about, both of those policies came to you from corporate headquarters and you just put them in the manual? You didn't have any discussions with anybody to change them or negotiate them or make any revisions to them?

A No, I had no authority or no particular reason, you might say, to change company policy. That came down and it was our responsibility to follow it.

Q You just got them and implemented them?

A That's right.

*Id.* at 22–23.

2. The district court relied on *Johnson v. Nat'l Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779, 782 (1976), in which the court found nothing in the company policy manual "expressly providing for a fixed term of employment, nor is there language from which a contract to that effect could be inferred." The court went on to state that

the manual was not published until long after plaintiff's employment. It was only a unilateral expression of company policy and procedures. Its terms were not bargained for by the parties and any benefits conferred by it were mere gratuities. Certainly, no meeting

Hence this policy did not constitute an employment contract between plaintiff and defendant for a definite term.

 In addition, we do not find that the evidence or circumstances established that both parties understood that an employment contract existed between plaintiff and defendant that was for a definite term.[3] *Justice v. Stanley Aviation Corp.,* 35 Colo.App. 1, 530 P.2d 984, 986 (1974). As to plaintiff's contention that defendant's rehiring on a salary based on a yearly amount implied a fixed term of employment, "unless the circumstances indicate otherwise, a contract which sets forth an annual salary rate but states no definite term of employment is considered to be indefinite employment, terminable at the will of either party without incurring liability for breach of contract." *Id.* 530 P.2d at 985. There was no fixed term of employment, and thus either party could terminate the contract at any time without incurring liability for damages. *Id.; see also Lampe v. Presbyterian Medical Center,* 41 Colo. App. 465, 590 P.2d 513, 514 (1978).

Plaintiff contends that employment contracts for an indefinite period of time are not terminable at will by the employer. Plaintiff says that the modern view as set forth in *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974), eroded the common law rule by holding that a termination by an employer of contracts of employment "at will" which was motivated by bad faith or malice or based on retaliation was not in the best interests of the economic system or the public good and thus constituted a breach of the employment contract. In *Corbin v. Sinclair Marketing, Inc.,* 684

P.2d 265 (Colo.Ct.App.1984), plaintiff contended that he was discharged as a result of his refusal to act in a manner contrary to state and federal statutory statements of public policy. The court concluded that

these statutory pronouncements constitute the same "broad, general statement of policy" which, in *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978), we found inadequate to justify adoption of an exception to the rule that an indefinite general hiring is terminable at will by either party to the employment. *See Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981); *Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super.Ct. 560, 422 A.2d 611 (1981); *cf. Cloutier v. Great Atlantic & Pacific Tea Co., Inc.,* 121 N.H. 915, 436 A.2d 1140 (1981).

*Id.* at 267.

*Lampe* rejected a claim of retaliatory firing on stated reasons that were false. The claims referred generally to five different varieties of federal and state labor legislation and asserted a governmental policy that employers and employees deal equitably, fairly and honestly with each other. The Colorado court said that "[i]n the absence of a contract or legislation to the contrary, an indefinite general hiring is terminable at will by either party." *Lampe,* 590 F.2d at 516. We feel that Colorado has not adopted a public policy exception to the rule that an indefinite general hiring is terminable at will by either party to the employment, and that under Colorado law recovery is not permissible on the theory advanced. *See also Ritter v. Colorado*

---

3. We recognize that

an employer's distribution to employees of handbooks or policy manuals which contain specific procedures for termination of employment, when relied upon by an employee and supported by the consideration of continued service, may result in the employer becoming contractually bound to comply with those procedures.

of the minds was evidenced by defendant's unilateral act of publishing company policy. *Id.*

*Salimi v. Farmers Ins. Group,* 684 P.2d 264, 265 (Colo.Ct.App.1984). Plaintiff does not contend on appeal that defendant did not follow its procedures for termination of employment. In addition, the district court found that "even if the Court were to find that plaintiff was guaranteed employment for a period of at least one year from the annual performance review, defendant has fully complied. The parties stipulated that 'defendant received full pay and benefits ... until and including March 21, 1980.'" I R. 61.

*Interstate Gas Co.,* 593 F.Supp. 1279, at 1284–1285 (District of Colorado, 1984).

For the above stated reasons, we affirm.